UNITED STATES of America,
Plaintiff-Appellee,

v.

Eugene Neal BURCHFIELD, George S.
Varisco, Robert Lester Barton,
Defendants-Appellants.

No. 82–3061
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Nov. 7, 1983.

H. Jay Stevens, Asst. Federal Public Defender, Orlando, Fla., for Burchfield.

Russell E. Crawford, Jr., Orlando, Fla., for Varisco.

James Robert Valerino, Orlando, Fla., court-appointed, for Barton.

Stephen D. Milbrath, Asst. U.S. Atty., Orlando, Fla., Stephen L. Hiyama, Atty., U.S. Dept. of Justice, Appellate Section, Crim. Div., Washington, D.C., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY and TJOFLAT, Circuit Judges.

PER CURIAM:

Robert Lester Barton, Eugene Neal Burchfield, and George S. Varisco were tried by a jury and convicted of conspiring to pass and passing counterfeit bills in violation of 18 U.S.C.A. §§ 371 and 472. Barton was also convicted of possessing and concealing counterfeit bills in violation of 18 U.S.C.A. § 472. On appeal, defendants assert (1) error in the denial of a motion to

suppress, (2) error in the admission of some documentary evidence, (3) insufficiency of evidence, and (4) error in permitting a government expert to testify concerning the *modus operandi* commonly used in the passing of counterfeit currency. We affirm.

The first three points require no opinion. First, Varisco's attempt to suppress statements made to a government agent is foreclosed by the district court's finding that Varisco was advised of his rights under *Miranda* by the agent, and that Varisco subsequently indicated that he understood his rights and was willing to submit to an interview. Such findings are not clearly erroneous, *United States v. Satterfield,* 644 F.2d 1092, 1096 (5th Cir. Unit B 1981). Second, the evidence, viewed in the light most favorable to the government, *see Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), is clearly sufficient to support the verdict as it pertains to each of the three defendants on all counts. Third, the court did not abuse its discretion in admitting into evidence the government's Exhibit No. 15 against a lack of chain of custody objection.

As to the contention that the trial court erred in admitting the testimony of a government agent describing the *modus operandi* of those passing counterfeit monies, some analysis is appropriate. A brief review of the facts is helpful.

On four separate occasions on March 29, 1982, counterfeit $50 bills bearing the same serial number and manufactured by the same printing process were passed to Walt Disney World employees as payment for purchases made in the park. Barton had passed two such bills, Varisco one. Disney World investigators notified employees and circulated the serial number of the bills. As a result, when defendant Burchfield attempted to pay for a decorative hotplate with a counterfeit $50 bill, the cashier determined that the serial number matched that of the three bills already passed and Disney security was notified. The cashier later identified Burchfield as the man who had attempted to pass the bill.

Based upon her identification, Disney investigators detained Burchfield as he was leaving the park with the other two defendants. All three men accompanied the investigators to the security office, where a search of the brown canvas bag carried by defendant Barton yielded 90 counterfeit $50. bills bearing the same serial number and manufactured by the same printing process as the four bills passed earlier. Some genuine currency was also found. Burchfield's fingerprint was on one of the 90 counterfeit bills. No bills were found on either Burchfield or Varisco.

As part of the government's case-in-chief, a government agent testified that it is common for those conspiring to pass counterfeit monies to divide functions so that one person carries a "bag" containing large sums of counterfeit currency while another actually passes the counterfeit money. He stated that the conspirators will often switch functions, alternately holding and passing the currency, and that it is common for the holder of the counterfeit bills in such a situation to also hold some genuine currency.

The agent's observations were predicated upon eighteen years of investigation of persons passing counterfeit bills, during which time he had frequently testified about techniques employed by such persons. His competency to testify as an expert is not at issue here. The defendants argue that his testimony was irrelevant or, alternatively, that the danger of unfair prejudice which it presented substantially outweighed its probative value.

This Court has explicitly recognized that in determining whether expert testimony should be admitted or excluded, "[t]he trial judge has broad discretion ... and his action is to be sustained unless manifestly erroneous". *United States v. Costa,* 691 F.2d 1358, 1361 (11th Cir.1982). The agent's testimony is the kind that enlightens and informs lay persons without expertise in a specialized field. In the language of Fed.R.Evid. 702, such "specialized knowledge will assist the trier of fact to under-

stand the evidence or to determine a fact in issue."

This Court has recognized that increasingly, "in federal courts, law enforcement officials have been allowed to testify as experts in order to establish the *modus operandi* of particular crimes", *see United States v. Thomas,* 676 F.2d 531, 538 (11th Cir.1982). In *Thomas,* we upheld the trial court's admission of a special agent's testimony relating his knowledge of the *modus operandi* of drug couriers to the facts of the case in order to explain the significance of the defendant's behavior. Other circuits have generally admitted *modus operandi* testimony concerning specific kinds of crimes, *see e.g., United States v. Jackson,* 425 F.2d 574, 576 (D.C.Cir.1970) (pickpockets); *United States v. Scavo,* 593 F.2d 837, 843 (8th Cir.1979) (bookmaking operations); *United States v. Kampiles,* 609 F.2d 1233, 1247 (7th Cir.), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1979) (Soviet intelligence recruiting practices). In the instant case, the agent's testimony regarding counterfeit-bill-passing techniques helped to explain the actions of the defendants. The testimony was not unfairly prejudicial. The jurors were instructed to determine for themselves the weight which each expert opinion should be given.

The lack of a limiting instruction from the trial court at the time that the agent testified is not reversible error. No limiting instruction was requested by either party, and defendants registered no objection to the instructions given. If error at all, there was no plain error.

AFFIRMED.