UNITED STATES of America, Plaintiff-Appellee,

v.

Sunonda G. PAUL, Defendant-Appellant.

No. 97-9302.

United States Court of Appeals,

Eleventh Circuit.

May 13, 1999.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:97-CR-115-1GET), G. Ernest Tidwell, Judge.

Before HATCHETT, Chief Judge, HULL, Circuit Judge, and MOORE[*], District Judge.

HATCHETT, Chief Judge:

Appellant Sunonda Paul appeals the district court's (1) finding that a government witness was qualified to testify as a handwriting expert, (2) refusal to admit his handwriting expert's rebuttal testimony and (3) failure to declare a mistrial due to the prosecutor's improper remarks. We affirm.

## I. FACTS

In May 1996, an unidentified person who stated that he was a bank investigator telephoned Ed Spearman, branch manager of Wachovia National Bank (Wachovia) at Atlanta, Georgia, and warned him that someone intended to leave a note at the bank in an attempt to extort money from the bank. The "investigator" instructed Spearman to follow the directions in the note. Spearman contacted bank security and the Federal Bureau of Investigation (FBI), who advised him to contact the agency immediately if he received an extortion demand. On the following morning, a security camera outside the entrance to Wachovia Bank videotaped a man, wearing a scarf and sunglasses, place an envelope under the front door of the bank. Inside the envelope, addressed to Spearman, was an extortion note that directed Spearman to deliver $100,000 to the

---

[*]Honorable William T. Moore, U.S. District Judge for the Southern District of Georgia, sitting by designation.

men's restroom of a downtown Atlanta McDonald's restaurant. The note threatened violence if Spearman did not follow the instructions and make the payment. Spearman notified bank security and the FBI.

The investigating agents developed a plan to arrest the extortionist: an FBI agent, acting as Spearman, would drive Spearman's car to the McDonald's and place a briefcase in the men's restroom, while surveillance agents would watch the restroom and arrest the person who took the briefcase.

In executing the plan, FBI Agent Eric Bryant testified that upon his arrival at the McDonald's, he entered the men's restroom, observed appellant Sunonda Paul in a restroom stall, left a briefcase and exited the restroom. FBI surveillance agents testified that they later saw Paul sitting at a table near the restroom. As Bryant left the McDonald's, surveillance agents observed Paul enter the restroom again and then attempt to leave the establishment with the briefcase in his backpack. When confronted, Paul told the agents that he was in the area to visit a nearby gym and had stopped at the McDonald's for breakfast. He also told them that he decided to take the briefcase after he found it in the restroom. Paul, however, was dressed in casual street clothing and had no gym clothes or athletic equipment in his possession. The agents arrested him.

## II. PROCEDURAL HISTORY

A grand jury indicted Paul on one count of bank extortion, in violation of 18 U.S.C. § 2113(a), and Paul pleaded not guilty. Prior to trial, Paul moved *in limine* to exclude FBI document examiner Larry Ziegler's testimony regarding handwriting analysis. The district court, however, denied Paul's motion at the pretrial hearing.

The demand note left at Wachovia was the key evidence in determining whether Paul was the extortionist. Although FBI agents examined the videotape to determine the identity of the person who delivered the note, they could not identify the person conclusively. Consequently, the FBI conducted fingerprint and handwriting analysis tests on the note to establish the identity of the extortionist. A fingerprint expert concluded that the latent prints on the note and envelope did not match Paul's fingerprints.

Ziegler, the FBI document examiner, compared the handwriting on the note and the envelope to Paul's handwriting samples and concluded that Paul was the author of both. Specifically, Ziegler asked Paul to write the word restaurant. In the presence of an FBI agent, Paul misspelled the word as follows: "resturant." In the extortion note the extortionist misspelled the word restaurant the same way. Ziegler also asked Paul to write out "Spearman." Paul spelled it "Sperman," the same way the extortionist had addressed the envelope.

In June 1997, a jury could not reach a unanimous verdict; therefore, the court declared a mistrial. On August 6, 1997, at the retrial, the district court orally granted the government's motion *in limine* to exclude the testimony of Mark Denbeaux, a law professor, pursuant to Federal Rule of Evidence 702 because the district court thought his testimony would be confusing to the jury.[1] The court also denied Paul's renewed motion to exclude Ziegler's testimony regarding handwriting analysis. The second jury found Paul guilty of extortion, in violation of 18 U.S.C. § 2113(a), and the district court sentenced Paul to 63 months imprisonment, with a 3-year term of supervised release.

## III. ISSUES

The issues we discuss are whether: (1) the district court abused its discretion in qualifying Ziegler as an expert and allowing the government to present handwriting analysis evidence; (2) the district court abused its discretion in excluding Denbeaux's rebuttal testimony; and (3) the prosecutor's closing argument improperly shifted the burden of proof to Paul.

## IV. STANDARD OF REVIEW

This court reviews the district court's decision to exclude expert testimony under Federal Rule of Evidence 702 for abuse of discretion. *General Electric Co. v. Joiner,* 522 U.S. 136, 139, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *United States v. Gilliard,* 133 F.3d 809 (11th Cir.1998). To the extent that a ruling of the district court turns on an interpretation of a Federal Rule of Evidence, our review is plenary. *Daubert v.*

---

[1]The district court noted that it had been willing to exclude Denbeaux's testimony from the first trial, but the court allowed it when the Assistant United States Attorney who initially tried the case asked that the court admit the testimony.

*Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). As to expert testimony, however, we review for abuse of discretion. *See General Electric,* 522 U.S. at 139, 118 S.Ct. 512. In reviewing a claim of prosecutorial misconduct, we assess (1) whether the challenged comments were improper and (2) if so, whether they prejudiced the defendant's substantial rights. *United States v. Delgado,* 56 F.3d 1357, 1368 (11th Cir.1995).

## V. DISCUSSION

*A.      Ziegler's Testimony*

Paul contends that the district court abused its discretion in admitting Ziegler's testimony as an expert document examiner because: (1) his handwriting analysis failed to meet the reliability requirements of *Daubert;* (2) Ziegler's testimony did not assist the trier of fact; and (3) Ziegler's testimony was more prejudicial than probative under Federal Rules of Evidence 403.

*1.      Admissibility of Handwriting Analysis*

Paul argues that Ziegler's testimony is not admissible under the *Daubert* guidelines because handwriting analysis does not qualify as reliable scientific evidence. His argument is without merit.[2] In *Daubert,* the Supreme Court held that Federal Rule of Evidence 702 controls decisions regarding the admissibility of expert testimony.[3] The Supreme Court declared that under rule 702, when "[f]aced with a proffer of expert scientific testimony ... the trial judge must determine at the outset pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786. The Supreme Court

---

[2]Courts have long received handwriting analysis testimony as admissible evidence. *See United States v. Jones*, 107 F.3d 1147, 1160-61 (6th Cir.1997) (handwriting expert's testimony admissible to show that signatures on numerous documents were defendant's); *United States v. Velasquez*, 64 F.3d 844, 848-50 (3d Cir.1995) (handwriting expert witness admissible).

[3]Federal Rule of Evidence 702 provides: "If scientific, technical or other specialized knowledge will assist the court to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702.

stated that "[t]he inquiry envisioned by Rule 702 is, we emphasize, a flexible one" and that "Rule 702 ... assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 594, 597, 113 S.Ct. 2786. The Court also listed several factors to assist in the determination of whether evidence is scientifically reliable.[4] *See Daubert,* 509 U.S. 592-95, 113 S.Ct. 2786.

Many circuits were split at the time of trial, however, on whether *Daubert* should apply to nonscientific expert testimony. Some held that the application of *Daubert* is limited to scientific testimony, while others used *Daubert* 's guidance to ensure the reliability of all expert testimony presented at trial. *Compare McKendall v. Crown Control Corp.,* 122 F.3d 803 (9th Cir.1997) (limiting the application of *Daubert* to the evaluation of scientific testimony); *with Watkins v. Telsmith, Inc.,* 121 F.3d 984 (5th Cir.1997) (holding that the application of *Daubert* is not limited to scientific knowledge).

Recently, however, in *Kumho Tire Company, Ltd. v. Carmichael,* the Supreme Court held that *Daubert* 's "gatekeeping" obligation, requiring the trial judge's inquiry into both the expert's relevance and reliability, applies not only to testimony based on "scientific" testimony, but to all expert testimony. *Kumho,* --- U.S. ----, ----, 119 S.Ct. 1167, 1174, --- L.Ed.2d ----, ---- (1999). The Court further noted that rules 702 and 703 give all expert witnesses testimonial leeway unavailable to other witnesses on the presumption that the expert's opinion "will have a reliable basis in the knowledge and experience of his discipline." *Kumho,* --- U.S. at ----, 119 S.Ct. at 1174 (citing *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786). Moreover, the Court held that a trial judge may consider one or more of the specific *Daubert* factors when doing so will help determine that expert's reliability. *Kumho,* --- U.S. at ----, 119 S.Ct. at 1175. But, as the Court stated in *Daubert,* the test of reliability is a "flexible" one, and *Daubert* 's list of specific factors neither necessarily nor solely applies to all experts or in every case. *Kumho,* --- U.S. at ----, 119 S.Ct. at 1175 (citing *Daubert,* 509 U.S.

---

[4]The *Daubert* factors include: (1) whether the theory or technique the expert employs is generally accepted in the scientific community; (2) whether the theory has been subject to peer review and publication; (3) whether the theory can and has been tested; and (4) whether the known or potential rate of error is acceptable. *Daubert,* 509 U.S. at 592-95, 113 S.Ct. 2786.

at 594, 113 S.Ct. 2786).  Alternatively, *Kumho* declares that "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."  *Kumho,* --- U.S. at ----, 119 S.Ct. at 1171 (citing *General Electric Co. v. Joiner,* 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (stating that courts of appeals are to apply "abuse of discretion" standard when reviewing district court's reliability determination)).

2.      *Testimony Assists Trier of Fact*

Paul also asserts that Ziegler's testimony was inadmissible because it did not assist the jury's understanding of the evidence.  Properly qualified expert witnesses may testify regarding their specialized knowledge in a given field if it "would assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702; *see also United States v. Rouco,* 765 F.2d 983, 995 (11th Cir.1985) (arguing that counsel may use an expert if the expert's testimony can offer something "beyond the understanding and experience of the average citizen"), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1646, 90 L.Ed.2d 190 (1986); *United States v. Burchfield,* 719 F.2d 356 (11th Cir.1983) (explaining that expert testimony is admissible where it is "the kind that enlightens and informs lay persons without expertise in a specialized field").

Paul has not challenged on appeal Ziegler's qualifications as an expert on handwriting analysis.  In fact, at the time of the trial, Ziegler:  (1) was a full time handwriting examiner for 30 years;  (2) was a member of four professional handwriting analysis organizations;  (3) established both the Secret Service's and the Naval Investigative Service's "questioned document" laboratories;  (4) lectured and taught extensively in the field of handwriting analysis;  and (5) trained new "questioned document" examiners for several law enforcement organizations.  Consequently, we hold that Ziegler's expert testimony could assist the jury.

3.      *Testimony More Probative than Prejudicial*

Paul asserts that the district court should have excluded Ziegler's testimony under Federal Rule of Evidence 403 as prejudicial because he claims the jury would have believed that Ziegler's analysis was

6

scientific when it was not.[5] Paul, however, cites no authority excluding testimony from an expert handwriting examiner on the basis that it sounded scientific, but was not. To the contrary, the Sixth Circuit in *United States v. Jones* concluded that the ability of the jury to perform the same visual comparisons as the expert "cuts against the danger of undue prejudice from the mystique attached to 'experts.'" 107 F.3d 1147, 1160-61 (6th Cir.1997). As was true in *Jones,* Ziegler specifically identified points of comparison that he recognized between the writing of the extortion note and the handwriting examples that Paul provided. The jury was free to conduct its own comparison and reach its own conclusion regarding the author of the extortion note.

Moreover, Ziegler acknowledged on cross-examination that no licensing board existed for questioned documents examiners, and the profession is not subject to standards that quantify or measure the work of individual examiners. Given Ziegler's admissions, the jury would not have been confused whether handwriting analysis is scientific or is unassailable. Therefore, this court cannot conclude that Ziegler's qualifications prejudiced Paul. Consequently, we hold that the district court did not err in admitting Ziegler's testimony.

B.    *Denbeaux's Testimony*

Paul argues that the district court abused its discretion in not admitting Denbeaux's rebuttal testimony. Specifically, Paul contends that if Ziegler's testimony was admissible under rule 702, then Denbeaux's testimony was also admissible pursuant to rule 702 because Denbeaux's testimony was critical for the jury to understand the limitations of Ziegler's testimony.

The government asserts two grounds for excluding Denbeaux's testimony: (1) Paul cannot show that Denbeaux was an expert on handwriting analysis; and (2) the court's exclusion of Denbeaux's testimony did not prejudice Paul.

---

[5]Federal Rule of Evidence 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

Denbeaux was not qualified to testify as an expert in handwriting analysis because he: (1) did not possess an acceptable degree of "knowledge"; (2) would not have assisted the jury; and (3) was not a qualified expert. Fed.R.Evid. 702. The record reflects that Denbeaux had no skill, experience, training or education in the field of handwriting analysis. The record shows that Denbeaux has a law degree and that he is a law professor who teaches evidence. Before 1989, he reviewed the literature in the field of questioned document examinations, and then coauthored a law review article critical of forensic document examiners' ability to reach the correct conclusion in questioned document examinations. *See* D. Michael Risinger, Mark Denbeaux and Michael J. Saks, *Exorcism of Ignorance as a Proxy for Rational Knowledge: The Lessons of Handwriting Identification Expertise,* 137 U. Pa. L.Rev. 731 (1989). His skill, experience, training and education as a lawyer did not make him any more qualified to testify as an expert on handwriting analysis than a lay person who read the same articles.

At the time of the trial, Denbeaux had done virtually no further research or writing on the subject of the reliability of handwriting expertise since the University of Pennsylvania published his law review article in 1989. During cross-examination, he admitted that he was not a questioned documents examiner, had received no formal training in the field, had never attended seminars on handwriting analysis, had never worked in a questioned documents laboratory and was not a member of any professional organizations in the field. Further, because Denbeaux was not an expert on the limitations of handwriting analysis, the district court's exclusion of his testimony did not prejudice Paul. Denbeaux's background did not qualify him as an expert, and his knowledge of the subject matter is so limited that it was not an abuse of discretion for the district court to exclude his testimony under rule 702. *See* Fed.R.Evid. 702.

C.    *Prosecutorial Misconduct*

Paul asserts that the prosecutor's closing argument was improper and unlawfully shifted the burden of proof. "Prosecutorial misconduct requires a new trial only if [the court] find[s] the remarks (1) were

8

improper and (2) prejudiced the defendants' substantive rights." *United States v. Delgado,* 56 F.3d 1357, 1368 (11th Cir.1995) (citing *United States v. Cole,* 755 F.2d 748, 767 (11th Cir.1985)).

In his closing argument, the prosecutor stated: "Remember[,] the defense has the resources and has the opportunity to produce evidence themselves, as you saw the defendant do." Paul's lawyer objected and the court overruled the objection stating, "He [the government] didn't say you had a burden as I understood him. He merely said opportunity."

The government's statement did not prejudice Paul's substantive rights in shifting the burden of proof. The government told the jury that Paul had the opportunity to produce a handwriting expert to rebut Ziegler's testimony—not that Paul had any burden to produce a rebuttal expert. Additionally, the prosecutor, Paul's lawyer and the court repeatedly reminded the jury that the government bore the burden of proof. Furthermore, the district court's instruction on the burden of proof cured any prejudice. *See Duncan v. Stynchcombe,* 704 F.2d 1213, 1216 (11th Cir.1983).

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

9