**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard Junior FRAZIER,**
**Defendant–Appellant.**

No. 01–14680.

United States Court of Appeals,
Eleventh Circuit.

Feb. 26, 2003.

Stephanie Kearns, Fed. Def. Program, Inc., Atlanta, GA, for Defendant–Appellant.

Thomas Aloysius Devlin, Jr., Atlanta, GA, for Plaintiff–Appellee.

Before BIRCH, MARCUS and CUDAHY \*, Circuit Judges.

BIRCH, Circuit Judge:

Richard Junior Frazier was convicted of kidnaping in violation of 18 U.S.C. § 1201(a)(1), and accused of sexually assaulting his eighteen-year-old victim, Lori Kimsey. On appeal, Frazier contests two evidentiary rulings made by the district court during his trial. First, Frazier appeals the district court's decision to exclude expert testimony from forensic investigator Robert Tressel. Tressel would have testified that neither Frazier's hair nor his bodily fluids were found on Kimsey's person or in the car where the assault allegedly occurred, and that the absence of forensic evidence did not support Kimsey's claim of sexual assault. Second, Frazier appeals the district court's decision to allow the prosecution to rebut the inference Tressel was not allowed to make. We conclude that the district court abused its discretion in excluding Tressel's testimony, and in so doing violated a substantial right of the defendant. Accordingly, we VACATE the judgment of the district court and REMAND for a new trial.

## I. BACKGROUND

At trial, two explanations of the events of 31 October 2000 emerged. Kimsey claimed that Frazier abducted her by knife-point, forced her to drive to a dark wooded area, and committed multiple sexual assaults against her. Frazier, on the other hand, claimed that Kimsey offered him a ride, and that the young woman manufactured the allegations of sexual assault to explain the reason she missed her curfew. Frazier's defense was based on a strategy of discrediting Kimsey: if Frazier could establish that Kimsey lied about the sexual assaults, then Frazier could undermine the credibility of Kimsey's kidnapping claim.

The jury which convicted Frazier made no particular findings of fact. Based on testimony, it is clear that Kimsey stopped by the Walmart in Cornelia, Georgia on the evening of 31 October 2000. As recorded by a video camera trained on the Walmart parking lot, Kimsey exited the store and got into her car, with Frazier getting into the backseat directly behind her. The video does not show that Frazier used a knife to force Kimsey into her car.

According to Kimsey, Frazier forced her to drive to a wooded area off a dirt road. Frazier moved to the front seat of the car, then forced Kimsey through the threat of his knife to take off her clothes. R7–154–55. Frazier removed his clothes as well. Over the next two hours, according to Kimsey, Frazier committed 11 acts of sexual assault, including rape, in the front seat and the back seat of Kimsey's car. Id. at 191–95. Frazier accounts for these two hours differently. He claims that Kimsey offered him a ride to an old girlfriend's house in Silva, North Carolina, and that the two hours were spent driving. Id. at 215–16.

It is clear that Kimsey and Frazier stopped off at a Circle K in Clarkesville, Georgia. A video camera recorded both of them entering the store, with Kimsey unrestrained, and Frazier buying cigarettes.

---

\* Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

Frazier then took the wheel and drove north on U.S. Highway 365. During this time, Kimsey's parents grew concerned about the fact that their daughter had missed her midnight curfew. Kimsey's father, Larry Kimsey, started driving around in search of her, and saw his daughter's vehicle pass him headed north on U.S. Highway 365. When Larry Kimsey saw that his daughter's vehicle did not take the turn necessary to get home, he sped up. Larry Kimsey saw that his daughter was not driving, and tried to flag the vehicle over to the side of the road. When his attempts were unsuccessful, Larry Kimsey attracted the attention of law enforcement, which pursued Frazier at· high speeds into North Carolina. The chase ultimately ended when Frazier ran Kimsey's car into a power pole.

Both Frazier and Kimsey were removed from the vehicle in handcuffs and taken to the hospital. Kimsey claimed that she had been sexually assaulted, so a nurse examined Kimsey using a rape kit, removing loose hair and swabbing for fluids. R8–272. After laboratory testing, it became clear that the nurse's examination of Kimsey produced no hair or bodily fluid matching Frazier. A sweep of Kimsey's vehicle was conducted, and law enforcement found none of Frazier's hairs or his bodily fluids at the scene of the alleged assault.

Before trial, Frazier gave notice to the Government that he intended to offer the testimony of Robert Tressel, a forensic investigator and former police officer. Tressel would testify that in the absence of head hair, facial hair, pubic hair, blood, saliva, or seminal fluid matching Frazier, "there is no forensic evidence to substantiate the claim of rape." Def. Ex. 2. The

prosecution made a motion in limine to exclude Tressel's testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). During the *Daubert* hearing, it became clear that Tressel's expertise was based on his experience: for ten years, Tressel worked as an investigator in Cobb County's unit on Crimes Against Persons, a unit which investigates homicides, rapes, other sexual assaults, and armed robberies. R5–5–6. Tressel estimated that he worked on as many as 250 sexual assault cases during his tenure. *Id.* at 9. In addition, Tressel spent thirteen years as chief investigator in the Cobb County Medical Examiner's Office, *id.* at 10, and currently owns and operates a private forensic investigation service. Def. Ex. 1. Based on Tressel's background, the district court deemed him "a very qualified criminal investigator." R5–66.

Nevertheless, the district court tightly circumscribed the limits of Tressel's proposed testimony. The district court ruled that Tressel would be allowed to testify regarding the standard procedures in investigating the site of an alleged sexual assault, and to testify that no hair or fluid matching Frazier was found. *See* R5–65–66. The district court would not, however, allow Tressel to draw any inferences based on the absence of evidence supporting Kimsey's allegations of sexual assault. *See id* at 65. So while Tressel could testify that "[t]he forensic evidence most commonly found during the analysis of a rape investigation is the transfer of hairs," Def. Ex. 2 at 2, Tressel could not testify that "it is my professional opinion that there is no forensic evidence to substantiate the claim of rape in this case." *Id.* at 3.[1] Frazier's

---

1. The district court excluded any testimony based on the following text from Tressel's forensic report:

   With the amount of sexual activity described in the search warrant affidavit, it would be expected that some transfer of

either hairs or seminal fluid would occur in this case.

The resulting laboratory findings in this case [ ] do not substantiate the claim of rape through forensic evidence. All findings of the samples that were taken, all of

defense attorney chose not to place Tressel on the stand, and elicited the fact that neither Frazier's hair nor his bodily fluids were found from two laboratory technicians at the Federal Bureau of Investigation ("FBI").

On rebuttal, the prosecution used the same FBI laboratory technicians to testify as experts. Frazier's attorney objected, arguing that the prosecution had failed to communicate its intention to call experts and in so doing violated the notice provisions of Federal Rule of Evidence 16. The district court overruled the objection, reasoning that Rule 16 only requires notice when the prosecution calls an expert during its case in chief. The court permitted the technicians to testify as experts regarding "the import of the fact that there was nothing found." R9–363.

The prosecution was then free to place technician Karen Lanning on the stand, and she testified that the absence of Frazier's hair did not necessarily lead to the conclusion that no sexual contact occurred. R9–371. She based her opinion on a study published in the Journal of Forensic Sciences. Then the prosecution called Anthony James Onorato, the second FBI lab technician, to testify that the absence of sperm did not necessarily lead to the conclusion that Frazier did not assault Kimsey. *Id.* at 387. Onorato did not base his opinions on scientific research, but on his own experience. In his words, "I guess that maybe three quarters of the cases we

which are essentially routine rape investigation procedures, were negative in finding a transfer of seminal fluid or hair from the defendant in this case. The medical examination of the victim only shows evidence of sexual activity on the part of the victim at some time prior to the examination taking place. The documented finding of bruising around the labia major indicates that the bruising may be substantially older than only a few hours.

receive in the lab have alleged sexual assault components," *id.* at 384, and "I would estimate ... that [in] 20 to 25 percent of those cases I don't identify semen." *Id.* at 386.

Frazier appeals the district court's decisions (1) to exclude Tressel's expert testimony on the implications of the absence of forensic evidence linking Frazier to the alleged assault, and (2) to allow the prosecution's expert testimony on the same point.

## II. *DISCUSSION*

■ We review the district court's decision to admit or exclude expert testimony for the abuse of discretion. *United States v. Paul*, 175 F.3d 906, 909 (11th Cir.1999). As for the district court's interpretation of Federal Rule of Evidence 702, the rule which governs the admission of expert testimony, our review is plenary. *Id.* No error regarding the admission or exclusion of evidence is reversible "unless a substantial right of the party is affected." Fed. R.Evid. 103(a). To determine whether the district court abused its discretion, we turn to Rule 702 and two decisions of the Supreme Court: *Daubert*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, and *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of

Based on my review of the available documents, it is my professional opinion that there is no forensic evidence to substantiate the claim of rape in this case. The only indication that any type of sexual activity occurred is the redness around the labia major and the redness of the cervix. These two injuries, in and of themselves, can occur during routine normal sexual activity. Ms. Kimsey's medical records indicate that she had sexual intercourse on 10/29/2000. Def. Ex. 2 at 2–3.

fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. Rule 702, as interpreted by the Supreme Court in *Daubert,* "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597, 113 S.Ct. at 2799. *Daubert*'s gatekeeping requirement was the reason cited by the district court for excluding Tressel's testimony. R5–66.

The transcript of the *Daubert* hearing reveals that the district court treated a scientific background as a prerequisite to expert status. The court explained that Tressel's testimony would not be excluded if it were based in scientific research: "if there is any scientific evidence that shows that in 99 percent of the time you find pubic hair, I would have no problem with that." *Id.* at 68. The court reiterated:

> If you have any scientific evidence that would indicate you should [find hair or bodily fluid], I have no problem, as I said, with his testifying that's what they look for, but when you start trying to prove that there is no case because they didn't find [hair or fluid], you have got to have something more than just his opinion. You need something showing some study.

*Id.* at 69. During rebuttal, the district court again explained to the defense that "you could not use Mr. Tressel as an expert, [because] I had concerns there about his qualifications in scientific areas." R9–365.

The district court's decision to exclude Tressel's testimony is based on an incomplete understanding of the background required of an expert witness. Rule 702 is broadly scoped and provides that a witness may be qualified by virtue of "knowledge, skill, experience, training, or education." At most, the district court evaluated two of the five possible grounds for expert status: knowledge and education. The defense, however, did not claim that Tressel's expertise was based in knowledge or education. Instead, the defense claimed that Tressel's expertise was based in experience. This is not a situation in which the district court evaluated Tressel's experience and found it wanting. On the contrary, the district court found Tressel to be very experienced, R5–66, but refused to qualify him as an expert in the absence of some scientific basis for his opinions.

■ Qualification as an expert does not depend on a scientific background. In *Kumho Tire,* the Supreme Court extended *Daubert*'s application from "scientific testimony" to "all expert testimony." *Kumho Tire,* 526 U.S. at 147, 119 S.Ct. at 1174. After *Kumho Tire,* science is no longer the *sine qua non* of analysis under *Daubert.*[2] The text of Rule 702 supports this analysis. Rule 702 is written in the disjunctive—expert status may be based on "knowledge, skill, experience, training, *or* education"—so a district court may base its decision on any one of the five grounds

**2.** Pursuant to *Kumho Tire,* the 2000 Advisory Committee Notes to Rule 702 provide that "[s]ome types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method...." Fed.R.Evid. 702 cmt. at 290.

listed. *See* Fed.R.Evid. 702 (emphasis added). This interpretation of the rule is confirmed by reading the Advisory Committee Notes, which specifically address witness experience: "Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony." Rule 702 cmt. at 290.

■ In addition to Rule 702, the common law provides authority for the conclusion that expert status may be based on witness experience. In *United States v. Paul*, our court ruled that 30 years of experience qualified a witness as an expert in handwriting analysis. *Paul*, 175 F.3d at 910–11. We reached a comparable decision in *Maiz v. Virani* when we ruled that the district court was correct to grant expert status to a witness with extensive experience—but no formal education—in the patterns and practices of Mexican immigration. *Maiz*, 253 F.3d 641, 669 (11th Cir.2001). In *United States v. Majors*, we concluded that experience alone was sufficient for a district court to grant expert status to a financial analyst who was not a certified public accountant. *Majors*, 196 F.3d 1206, 1215 (11th Cir.1999). We reasoned that expert status was appropriate because the analyst "possessed special knowledge and skill not available to the ordinary witness." *Id.*

Furthermore, our court has recognized expert status where a government agent or a forensic investigator has experience with a particular type of crime. *United States v. Thomas*, 676 F.2d 531, 538 (11th Cir.1982). Such investigators have been qualified as experts in a number of criminal contexts, including international drug smuggling, *United States v. Chastain*, 198 F.3d 1338, 1348–49 (11th Cir.1999); crack cocaine distribution, *United States v. Robinson*, 870 F.2d 612, 613 (11th Cir.1989) (per curiam); counterfeiting, *United States v. Burchfield*, 719 F.2d 356, 358 (11th Cir. 1983) (per curiam); and arson, *United States v. Marler*, 614 F.2d 47, 49–50 (5th Cir.1980). Even after *Kumho Tire* required the application of *Daubert*, experience-based expertise in investigating a particular type of crime has been deemed admissible. *See Majors*, 196 F.3d at 1215 (concluding that the district court was correct to admit expert testimony from an FBI analyst with substantial experience in investigating evidence of money laundering, mail fraud, and bank fraud.)

■ We conclude that district court should have admitted Tressel's testimony that Kimsey's allegation of sexual assault was not substantiated by forensic evidence. Tressel and his testimony survive the test for admissibility:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548, 562 (11th Cir.1998) (footnote omitted). With respect to the first prong, Tressel is qualified as an expert based on 20 years of experience in forensic analysis, including the investigation of hundreds of alleged sexual assaults.[3] With respect to the second prong, we note initially that "the nature of the issue, the expert's par-

---

**3.** As of the *Daubert* hearing in Frazier's case, Tressel had served as an expert witness in state and federal courtrooms across Georgia, Alabama, Florida, and North Carolina. R5–20.

ticular expertise, and the subject of his testimony" shape the reliability inquiry. *Kumho Tire,* 526 U.S. at 150, 119 S.Ct. at 1175 (quotation omitted). In expert testimony based on experience, it is unlikely that reliability will be established through statistics. Reliability in this particular case is established by Tressel's precision and logic. Tressel recounted the methodical and painstaking work necessary to gather forensic evidence. He then analyzed the findings in Frazier's case, reasoning that (1) the most common forms of forensic evidence found at the scene of a sexual assault are the hairs and fluids of the perpetrator, and (2) no evidence of Frazier's hair or fluid were found inside Kimsey's vehicle or on her person, so (3) Kimsey's allegations of sexual assault are not substantiated by the most likely forms of forensic evidence.[4] Tressel's analysis is not based on the examination of evidence; his analysis is based on reason and experience.[5] Reliability is established. With respect to the third and final prong of the *Daubert* analysis, Tressel has developed specialized and relevant knowledge in an area unknown to most lay people. Such expertise would help a jury reach a conclusion about Kimsey's allegations of sexual assault.

We remind the district court that "[t]he gatekeeper role ... is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1311 (11th Cir.1999). As the Supreme Court pointed out in *Daubert,* "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

*Daubert,* 509 U.S. at 596, 113 S.Ct. at 2798. In this case, the prosecution's objections were more properly directed at the weight and sufficiency, rather than the admissibility, of Tressel's testimony. *See Maiz,* 253 F.3d at 669.

■ By excluding Tressel's testimony, the district court violated "a substantial right" of defendant Frazier. *See* Fed. R.Evid. 103(a). As determined by the Supreme Court, "an essential component of procedural fairness is an opportunity to be heard. That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence...." *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 2146–47, 90 L.Ed.2d 636 (1986) (internal citation omitted). The heart of the defense case was attacking the credibility of Lori Kimsey. By excluding the essence of Tressel's testimony, the district court eviscerated Frazier's defense.

With the conclusion that the district court committed reversible error by excluding Tressel's testimony, we need not analyze Frazier's second allegation of error. We note, however, that by allowing F.B.I. laboratory technicians Lanning and Onorato to testify for the prosecution, the district court compounded the harm already done to Frazier's defense by allowing the prosecution to rebut an inference that the defense was not allowed to make.

### III. CONCLUSION

■ *Daubert's* requirement that the district court serve as an evidentiary gatekeeper has been extended by the Supreme Court. After *Kumho Tire,* a district court should address the reliability and relevancy of all expert testimony, not

---

4. We note that Tressel did not reach the more controversial conclusion that Frazier did not sexually assault Kimsey.

5. The distinction between the expertise prong and the reliability prong are blurred in the case of experience-based expert testimony. The expert's experience—assuming a certain degree of success—supports the reliability of his or her conclusions. Because of Tressel's success, *see* Def. Ex. 1, the reliability of his analysis is bolstered.

just that testimony based in science. *Kumho Tire*, 526 U.S. at 147, 119 S.Ct. at 1174. It follows, therefore, that reliability and relevancy may be established through expertise that is not scientific. Indeed, Rule 702 explicitly provides that expertise may be based on "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. In this case, the defense offered expertise based on experience. We conclude that the district court abused its discretion in excluding the essence of Robert Tressel's proposed testimony, and in so doing violated a substantial right of defendant Frazier. We VACATE the judgment of the district court, and REMAND for a new trial.

VACATED and REMANDED.

MARCUS, Circuit Judge, dissenting:

The question at issue today is whether the district court abused its discretion in refusing to admit certain testimony proffered by Robert Tressel, the defense's expert forensic investigator. Although the majority answers this question affirmatively, I cannot conclude, based on the record before me, that the district court's decision to exclude this evidence was " 'manifestly erroneous.' " *General Elec. Co. v. Joiner*, 522 U.S. 136, 142, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997) (quoting *Congress & Empire Spring Co. v. Edgar*, 99 U.S. 645, 658, 25 L.Ed. 487 (1878)). Accordingly, I respectfully dissent.

Sometime after eight o'clock on the evening of October 31, 2000, an eighteen year old student ("the victim") stopped at a Wal–Mart in Cornelia, Georgia to check the price of Halloween candy. Upon leaving the store she unlocked her car, and as she was about to get into the vehicle she was approached by appellant Richard Jun-

ior Frazier. Frazier carried a knife in his right hand, and asked the victim: "Will you take me where I want to go?" Having no choice, the victim responded affirmatively. With Frazier sitting in the back seat directly behind her, the victim, at appellant's direction, drove the two of them to a secluded, wooded area. Without exiting the vehicle, Frazier, again brandishing the knife, instructed her to remove her pants and underpants. Fearing for her life, the victim complied, and Frazier proceeded to rape her variously and repeatedly in a crime of unspeakable brutality. All told, Frazier subjected the victim to eleven acts of sexual assault in her own car.

When he was finished, Frazier drove the two of them north on U.S. Highway 441 toward North Carolina. By this time the victim's family had been alerted to her absence, and her father had gone looking for her. He spotted her vehicle, chased it for several miles and attempted to flag it down. Although he was unable to do so, he managed to attract the attention of a passing police officer, who attempted to pull the victim's car over. Frazier then led police on a high speed pursuit through Franklin, North Carolina, and ultimately crashed into a power pole along the side of North Carolina Route 28.

On June 20, 2001, Frazier was convicted in the United States District Court for the Northern District of Georgia of interstate kidnapping, in violation of 18 U.S.C. § 1201(a)(1). Although evidence of the sexual assaults was presented by the government at trial, the only crime for which Frazier stood trial was kidnapping. Because Frazier previously had been convicted of more than one "serious violent felony," [1] he was sentenced to mandatory life

---

1. Appellant had twice previously been convicted in the Georgia courts of each of the following crimes, for a total of six prior convictions: armed robbery, robbery and aggra-

vated assault. Because this kidnapping was Frazier's first federal conviction, it represent-

imprisonment under the federal three strikes law, 18 U.S.C. § 3559(c)(1)(A)(i).

At trial, Frazier's strategy was to discredit the victim's allegations of sexual abuse, and thus, by implication, of kidnapping.[2] As a means to this end, appellant offered the testimony of Robert Tressel, a forensic investigator. Tressel was prepared to testify to the effect that:

> With the amount of sexual activity described in the search warrant affidavit, it would be expected that some transfer of either hairs or seminal fluid would occur in this case.
>
> The resulting laboratory findings in this case[] do not substantiate the claim of rape through forensic evidence. All findings of the samples that were taken, all of which are essentially routine rape investigation procedures, were negative in finding a transfer of seminal fluid or hair from the defendant in this case. The medical examination of the victim only shows evidence of sexual activity on the part of the victim at some time prior to the examination taking place. The documented finding of bruising around the labia major indicates that the bruising may be substantially older than only a few hours.
>
> Based on my review of the available documents, it is my professional opinion that there is no forensic evidence to substantiate the claim of rape in this case. The only indication that any type of sexual activity occurred is the redness around the labia major and the redness of the cervix. These two injuries, in and of themselves, can occur during routine normal sexual activity. [The victim's]

medical records indicate that she had sexual intercourse on 10/29/2000.

Tressel's Report of Findings at 2–3.

After an extensive *Daubert* hearing, the district court found Tressel to be an "obviously very qualified criminal investigator" and permitted him to testify concerning the forensic procedures that were employed in examining the crime scene and the physical findings that resulted from those procedures. However, it refused to allow him to offer an ultimate opinion as to whether the victim's allegations of sexual assault were supported by the forensic evidence collected. The court reasoned that Tressel had not established the reliability of his conclusions, as his statement that *"it would be expected that some transfer of either hairs or seminal fluid would occur in this case"* was simply too vague to permit a reasonable juror to competently assess his opinion as to the significance of the fact that no such hairs or fluids were found on the victim's person or in her automobile. Indeed, the district court explicitly said that "if there is any scientific evidence that shows that in 99 percent of the time you find pubic hair, I would have no problem with that, but he [Tressel] has no study. He just says ... in a very nebulous statement that ... [pubic hair] was commonly found [in cases where the amount of sexual contact alleged by the victim actually transpired]." The court also disallowed Tressel from testifying as to the source of any cervical or labial injury because he was not a medical expert.[3]

---

ed the first time the government sought to have him sentenced under § 3559(c)(1)(A)(i).

**2.** Frazier told police that the victim had offered to take him to North Carolina, but requested that he drive her car.

**3.** I do not read the majority's opinion to designate this determination as incorrect, nor do

I think that there is any genuine question that Tressel was unqualified to testify as to these medical issues. *See* Transcript of June 11, 2001 *Daubert* hearing at 4–14 (Tressel describing his experience as a forensic investigator, not a medical expert).

The majority holds that by excluding Tressel's testimony that the absence of seminal fluid or pubic hairs belonging to Frazier on the victim or in the car cast into doubt the victim's claim of sexual assault, the district court deprived appellant of a fundamentally fair trial. It says that "[t]he transcript of the *Daubert* hearing reveals that the district court treated a scientific background as a prerequisite to expert status," and that its "decision to exclude Tressel's testimony is based on an incomplete understanding of the background required of an expert witness." The majority then sets forth the three-prong test for the admissibility of expert testimony articulated in *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998), applies it, and concludes that each of the *City of Tuscaloosa* factors is satisfied in this case.

The majority's analysis suffers from two basic flaws. First, I believe it misconstrues the basis for the district court's exclusion of Tressel's testimony, and thus its discussion of the possibility of qualifying a witness as an expert through experience, although correct, is largely irrelevant to the facts at bar. Second and more fundamentally, the majority fails to adhere to the Supreme Court's clear admonition that under the abuse of discretion standard a district court's evidentiary rulings must remain undisturbed absent manifest error. *See Joiner,* 522 U.S. at 142, 118 S.Ct. at 517. Indeed, it is by now axiomatic that the district court enjoys "considerable leeway" in making the ultimate decision to admit or exclude expert evidence. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999). Moreover, the Supreme Court has made abundantly clear that "[t]he trial court must have the same kind of latitude in deciding *how* to test an expert's reliability ... as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Id.* (emphasis original). Thus, "[i]t is very much a matter of discretion with the trial court whether to permit the introduction of [expert] evidence, and we will not reverse the decision of the trial court regarding the exclusion or admission of such evidence unless the trial court's decision is 'manifestly erroneous.' " *Michigan Millers Mut. Ins. Corp. v. Benfield,* 140 F.3d 915, 921 (11th Cir.1998).

As the majority notes, we engage in a three part inquiry to determine the admissibility of expert testimony under Fed. R.Evid. 702. Specifically, we must consider whether:

> (1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa,* 158 F.3d at 562 (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 2794–95, 125 L.Ed.2d 469 (1993)); *see also Maiz v. Virani,* 253 F.3d 641, 665 (11th Cir.2001) (same).

Preliminarily, I have no quarrel with the majority's conclusion that the first and third elements of this test are satisfied here. It is indisputable that by virtue of his experience Tressel was a qualified forensic investigator, and his testimony likely would have been helpful to the jury. However, I cannot accept the majority's observation that the district court failed to recognize this. At no point did the trial court refuse to qualify Tressel as an expert in forensic criminal investigation because his expertise was based on experience

rather than a scientific background. Indeed, the district court's concern was not with Tressel's qualification to offer expert opinions on this subject generally, but rather with the *basis* for—i.e., reliability of—his specific opinion that the forensic evidence did not support the victim's allegations. The mere fact that a testifying witness is properly afforded expert status does not mean that every opinion offered by that witness will be admissible under the test outlined above. Put differently, it is possible for a particular opinion proffered by a genuinely qualified expert to be unreliable. *See, e.g., McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir.2002) ("*Daubert* requires that trial courts act as 'gatekeepers' to ensure that speculative, unreliable expert testimony does not reach the jury."); *Tompkins v. Moore,* 193 F.3d 1327, 1337–38 (11th Cir. 1999) (describing conditions under which an expert's opinion may be considered unreliable). Accordingly, it is the reliability of the specific opinion proffered by Tressel—not his expert qualifications—that are genuinely at issue in this appeal.

It is this question of reliability that the second prong of the *City of Tuscaloosa* test is designed to answer, and it is on this issue that I disagree fundamentally with the majority. As alluded to, *supra,* the majority's primary error in resolving this issue lies in its refusal to accord sufficient deference to the district court's determination as to the reliability of Tressel's opinion.

It is a basic tenet of the law of evidence that "[p]roposed [expert] testimony must be supported by appropriate validation— i.e., 'good grounds,' based on what is known." *Daubert,* 509 U.S. at 590, 113 S.Ct. at 2795. Thus, "the Rules of Evidence—especially Rule 702—[assign] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597, 113 S.Ct. at 2799. This requirement that expert testimony be reliable—that is, based on an adequate methodological foundation—applies whether the "expert relies on the application of scientific principles . . . [or on] skill- or experience-based observation." *Kumho Tire,* 526 U.S. at 151, 119 S.Ct. at 1176 (citation omitted); *see also Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1315–17 (11th Cir.1999) (discussing the foundation required for expert testimony on causation in a tort case); *Maiz,* 253 F.3d at 664–65 (finding that the district court did not err by allowing an expert to base his opinion on an assumption that could be challenged by the opposing party).

The Court in *Daubert* proceeded to describe in general terms the contours of this reliability inquiry, noting the especial pertinence of: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Daubert,* 509 U.S. at 593–94, 113 S.Ct. at 2796–97. Although the Supreme Court explicitly cautioned that these factors do not exhaust the universe of considerations that bear on reliability, we have noted that where possible they at least should be considered. *See McCorvey,* 298 F.3d at 1256.

In this case, Tressel opined simply that "[w]ith the amount of sexual activity described in the search warrant affidavit, *it would be expected* that some transfer of either hairs or seminal fluid would occur. . . ." Tressel's Report of Findings at 2 (emphasis added). However, a careful review of the transcript of the *Daubert* hearing and Tressel's expert report show that Tressel failed to provide *any* specific foundation for his assertions that hair and

fluids were "commonly" found in sexual assault cases and that, therefore, the lack of such evidence supported the conclusion that there had not been an assault. Quite simply, Tressel was unable to offer any reliable information regarding the rates at which hairs or fluids are transferred during sexual contact. I believe that it was this lack of *any* verifiable basis for Tressel's opinion as to the victim's credibility that concerned the district court. It said: "[I]f there is any scientific evidence that shows that in 99 percent of the time, you find pubic hair, I would have no problem with that, but he [Tressel] has no study. He just says ... in a very nebulous statement that ... [pubic hair] was commonly found [in cases where the amount of sexual contact alleged by the victim actually transpired]." The court subsequently continued:

If you have any scientific evidence that would indicate you should [find pubic hairs or seminal fluid under circumstances such as those described by the victim], I have no problem ... but when you start trying to prove that there is no case because they didn't find it, you have got to have something more than just his opinion. You need something showing some study.

I have no idea ... how often [hairs or bodily fluids are found], and I have no basis of knowing, and base upon what you've presented today, I would not and will not allow it. I don't think that helps the jury.

. . .

I don't know what the percentage is. Are you going to say then there is a 50% chance [the victim is] not credible, or there's a 25% [chance] or a 75% [chance] she's not credible[?] I have difficulty with that, and I just don't think that under those circumstances I would admit it.

As evidenced by the foregoing passage, Tressel provided the district court with literally no basis for ascertaining the *reliability* of his proffered testimony. In the terms employed by *Daubert*, the district court could not have ascertained by any means—scientific or otherwise—the foundations of Tressel's testimony. Nor could it have known whether his ideas had been subjected to peer review or the percentage of cases in which his opinion had been erroneous. Indeed, it is evident that the district court was referring to this last shortcoming in Tressel's proffered testimony when it repeatedly asked "what the percentage is." Moreover, Tressel presented no evidence as to the general acceptance of his opinion concerning the correlation between the presence of seminal fluid or pubic hairs and the amount of sexual contact described by the victim.

Importantly, it would not have been necessary—nor, contrary to the majority's suggestion, do I believe the district court deemed it necessary—to establish such reliability via scientific means, e.g., a formal study. *See Kumho Tire*, 526 U.S. at 152, 119 S.Ct. at 1176 (discussing the possibility of satisfying *Daubert*'s reliability inquiry through a showing based on "personal experience"); *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir.2000) (noting, in a case concerning the reliability of expert testimony regarding the behavioral norms of street gangs, that "[t]he *Daubert* factors ... simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it").

The district court admittedly made several references to a study as a potential means of establishing the reliability of Tressel's testimony, and those statements certainly suggest that a scientific study would have been *one* way for Tressel to

demonstrate the reliability of his opinion. However, read in context, they cannot be taken to mean that only scientific evidence would provide an adequate foundation for Tressel's testimony. Indeed, the district court never indicated that Tressel's experience could not also have provided a proper foundation if it had been presented in such a way as to support the testimony. In fact, as the majority explicitly notes, the court properly permitted Anthony Oronato, an FBI forensic DNA examiner, to testify for the defense. The reliability of Oronato's opinion was derived from his experience-based testimony that in "20 to 25 percent of [sexual assault] cases I don't identify semen." Had Tressel similarly testified that based on his experience he found hair or fluids in X% of similar cases, it would not have been an abuse of discretion under Fed.R.Evid. 702 to allow in his opinion that the forensic evidence did not support the victim's allegations of sexual assault. However, he presented absolutely no such basis for opining as to the importance of the fact that no hairs or fluids were found in this case. Accordingly, Tressel's testimony is meaningfully distinguishable from that given by Oronato and was properly excluded by the district court.

In reaching the opposite conclusion, the majority states, as if it were somehow self-evident, that "[r]eliability in this particular case is established by Tressel's precision and logic." In particular, the majority predicates its finding of reliability on Tressel's assertions that "(1) the most common forms of forensic evidence found at the scene of a sexual assault are the hairs and fluids of the perpetrator, and (2) no evidence of Frazier's hair or fluid were found inside [the victim's] vehicle or on her person, so (3) [the victim's] allegations of sexual assault are not substantiated by the most likely forms of forensic evidence." The problem with this analytical mode is that a crucial step—call it (1.5)—is missing. For Tressel's testimony to have been reliable under Fed.R.Evid. 702, he necessarily would have established with some measure of precision *how* common it is to find such hairs and fluids. Yet he never even testified as to how often, in his experience, these types of forensic evidence are found in cases like this one. The absence of any methodological foundation for his opinion rendered this portion of Tressel's testimony objectively unverifiable, and prevented the jury from making an informed assessment of its significance. I can discern no abuse of discretion, let alone manifest error, in the district court's conclusion that Tressel's proffered testimony on this matter was unreliable and therefore inadmissible.

The majority's holding that the district court abused its discretion eviscerates the critical gatekeeping role played by the trial court in determining the admissibility of expert opinion testimony and unapologetically substitutes its own reliability assessment for that of the district court in direct contravention of the Supreme Court's admonition that an appellate court is not empowered to do so. *See Kumho Tire*, 526 U.S. at 152, 119 S.Ct. at 1176. And it does so with no real analysis of how or why Tressel's specific opinion as to the credibility of the victim's allegations of sexual abuse is in fact reliable.

Accordingly, I respectfully dissent.