OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Defendant was convicted of robbery for an armed holdup of a clerk in a convenience store. The robbery was recorded on the store’s surveillance videotape, which the clerk viewed shortly after the event. As his chief contention on this appeal, defendant asserts that the clerk’s identification testimony should have been precluded, owing to the People’s failure to serve him with notice of the surveillance tape viewing
 
 (see
 
 CPL 710.30). Under the facts of this case, we disagree and affirm defendant’s conviction.
 

 I.
 

 On November 14, 1997, defendant and a female accomplice entered a convenience store in the Town of Greece. After asking the clerk for cigarettes, defendant brandished a gun case and ordered the clerk to open the cash register. Defendant’s accomplice then went behind the counter and took the money. Realizing that the robbery was being filmed on the store’s surveillance camera, defendant ordered the clerk to show him where the surveillance equipment was located. He then tried to get at the videotape, but was unsuccessful, and the pair fled. Later that night, Officer Lou Buduson showed the clerk the surveillance videotape, which she authenticated. Defendant was subsequently apprehended and indicted for first and second degree robbery.
 

 Before trial and acting pursuant to CPL 710.30, the prosecution notified defendant that the clerk had previously observed defendant at a lineup and in a set of still photographs culled from the videotape.
 
 [1]
 
 The CPL 710.30 notice, however, and the
 
 Wade
 
 hearing that followed, did not address the videotape viewing.
 

 
 *161
 
 Through trial testimony given by Officer Buduson, the defense learned for the first time that the clerk had viewed the videotape several hours after the robbery and said “[t]hat’s them.” Defendant promptly moved for preclusion of the clerk’s identification testimony based on the People’s failure to notify him of that viewing pursuant to CPL 710.30. The Trial Judge denied the motion, but allowed defense counsel to cross-examine Buduson “regarding [the] circumstances surrounding the viewing of that videotape.” The clerk eventually testified as well, describing the robbery and her viewing of the videotape. The jury found defendant guilty as charged.
 
 [2]
 

 The Appellate Division rejected defendant’s CPL 710.30 argument and affirmed his conviction. A Judge of this Court granted defendant permission to appeal and we now affirm.
 

 II.
 

 CPL 710.30 requires that within 15 days after a defendant’s arraignment the People serve notice of their intention to offer at trial any “testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such” (CPL 710.30 [1]). If notice is not given, the People are precluded from introducing such testimony at trial, unless they show good cause for failing to do so or the defendant moves to suppress the evidence and the motion is denied
 
 (see
 
 CPL 710.30 [2], [3];
 
 People v O’Doherty,
 
 70 NY2d 479, 483 [1987]).
 

 The Legislature enacted CPL 710.30 to give a defendant the opportunity, before trial, to test the admissibility of any identification testimony the People intend to offer
 
 (see People v Newball,
 
 76 NY2d 587, 591 [1990];
 
 People v White,
 
 73 NY2d 468, 474 [1989]). The main concern motivating the statute was the possibility, recognized in three Supreme Court decisions,
 
 [3]
 
 that pretrial identification procedures could be so suggestive or misleading as to compromise a defendant’s constitutional right
 
 *162
 
 to due process of law.
 
 [4]
 
 The danger sought to be avoided is, and always has been, the risk of convicting the innocent through tainted identification procedures
 
 (see Collins,
 
 60 NY2d at 218-219;
 
 see generally
 
 Wall, Eye-Witness Identification in Criminal Cases, at 5-25 [1965]).
 

 In the case before us, we conclude that in viewing the videotape the clerk did not “previously identify] [defendant] as such” — i.e., as the defendant in the case — within the meaning of CPL 710.30 (1). It is undisputed that the videotape depicted the actual robbery, and that the only persons shown in the videotape were the clerk and the robbers. When the police showed the tape to the clerk, they had no suspects and had not even begun to search for any. Unlike lineups or photo arrays, in which the defendant’s identity is at issue, the clerk was not presented with a group of individuals (one of whom the police suspected of the crime) and asked to make an identification.
 
 Nor
 
 was this a showup in which the witness is asked whether a particular suspect committed the crime, or a police-arranged canvassing of a public area following a crime. Here, the only person the clerk could possibly confirm to be the robber was the person on the videotape who was concededly in the process of robbing her. There were no other choices, and there was nothing resembling a selection process. Although she said “[t]hat’s them” when she viewed the tape, the clerk was simply ratifying the events as revealed in the videotape, without identifying any known individual as the robber. In short, there was no issue or inquiry as to defendant’s identity — or even his existence — when the clerk viewed the videotape. As we made clear in
 
 Gissendanner,
 
 “[i]n cases in which the defendant’s identity is not in issue, * * * ‘suggestiveness’ is not a concern and, hence, [CPL 710.30] does not come into play” (48 NY2d at 552).
 
 [5]
 

 Moreover, accepting defendant’s position would do nothing to further the purpose of the statute. He argues that when the
 
 *163
 
 clerk viewed the tape she was subjected to an “unduly suggestive identification procedure.” The argument is dressed in appropriate nomenclature but fails under scrutiny. Undue suggestiveness lies at the heart of
 
 Wade
 
 jurisprudence, but that concern is not ordinarily implicated when (as here) the crime victim is shown an actual depiction of the robbery she herself witnessed.
 
 Wade
 
 hearings typically involve determinations as to whether law enforcement officials presented an image of a particular person (the defendant) in such a way as to suggest unfairly to the witness that the defendant committed the crime. This type of undue suggestiveness may result, for example, from an unfair lineup in which the defendant generally resembles the offender but stands out as markedly different from the others
 
 (see People v Owens,
 
 74 NY2d 677 [1989]). It also may occur where the defendant is the only person shown to a witness and the police suggest to the witness that the defendant is the culprit
 
 (see People v Adams,
 
 53 NY2d 241 [1981]) or when the police present the victim with only the photograph of a person who looks something like the offender
 
 (see Matter of James H.,
 
 34 NY2d 814 [1974];
 
 see generally 2
 
 LaFave, Israel and King, Criminal Procedure § 7.4, at 666 [2d ed 1999]).
 

 These and other examples of undue suggestiveness could carry serious consequences, because the witness may inappropriately be drawn to the image of the defendant as the offender. Worse yet, after a misidentification occurs, the witness’s sense of recall can become impaired — perhaps irreparably — as the defendant’s image tends to supplant the image of the actual criminal. The Supreme Court made this point in its first photographic identity case,
 
 Simmons v United States
 
 (390 US 377 [1968]), when it stated that “[r]egardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification”
 
 (id.
 
 at 383-384).
 

 Here the opposite took place. As the Appellate Division aptly pointed out, the police did not have a depiction of defendant, let alone arrange to present the clerk with one, when they showed her the videotape. They merely asked her to view the film of the actual robbery and thus review the very event she
 
 *164
 
 herself had experienced. Inasmuch as it was the robber shown on the videotape (as opposed to a police-acquired photograph or other depiction of defendant), there is no danger that the clerk identified defendant by unduly suggestive means.
 
 [6]
 

 Defendant’s claim boils down to his assertion that the clerk’s identification of the robber was tainted by her having taken a second look (on video) of the self-same robber shortly after the robbery. We cannot agree with this proposition or easily conceive of how viewing a clear image of the robber is an “undue” or improper suggestion of what he looked like.
 

 Therefore, under the circumstances presented, we conclude that defendant was not entitled to notice of the surveillance tape viewing pursuant to CPL 710.30. Defendant’s remaining contentions also lack merit.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
 

 Order affirmed.
 

 [1]
 

 . Five days after the robbery, police officers showed the clerk five photographs taken from the surveillance video. After viewing the photographs, she confirmed that they were accurate depictions of the robbery. Before trial, defendant moved to suppress this testimony, contending that the viewing of the photographs and the lineup were unduly suggestive. After a
 
 Wade
 
 hearing
 
 (see United States v Wade,
 
 388 US 218 [1967]) the court denied the motion, concluding that neither the photographs nor the lineup was unduly suggestive. Where, as here, a hearing court’s determination at a
 
 Wade
 
 hearing is supported by evidence in the record and affirmed on direct appeal, it is beyond our powers of review absent an error of law
 
 (see People v
 
 
 *161
 

 Jackson,
 
 98 NY2d 555, 559 [2002];
 
 People v Wilson,
 
 64 NY2d 634, 636 [1984];
 
 People v Dickerson,
 
 50 NY2d 937 [1980]).
 

 [2]
 

 . With the consent of both parties, the second-degree robbery count was dismissed as an inclusory concurrent count.
 

 [3]
 

 .
 
 See Stovall v Denno,
 
 388 US 293 (1967);
 
 Gilbert v California,
 
 388 US 263 (1967);
 
 United States v Wade,
 
 388 US 218 (1967).
 

 [4]
 

 .
 
 See
 
 Mem of Commn on Revision of Penal Law and Criminal Code, 1970 NY Legis Ann, at 36, Bill Jacket, L 1970, ch 996;
 
 see also People v Collins,
 
 60 NY2d 214, 218-219 (1983);
 
 People v Gissendanner,
 
 48 NY2d 543, 552 (1979).
 

 [5]
 

 . The same point was made in a similar context in
 
 United States v Mac-key
 
 (474 F2d 55 [4th Cir 1973]), where the court held that viewing crime scene photographs was not an identification procedure because the “pictures were not shown to the witnesses in an attempt to have them identify someone from a number of choices. Rather, pictures of the robbery itself, depicting scenes which the witnesses had actually observed, were used to clarify, explain and demonstrate the events as they occurred, and to refresh the witnesses’ recollections thereof. There was no possibility of impermissibly sug
 
 *163
 
 gestive procedures being used to influence any identifications by the witnesses, for they were not making identifications”
 
 (id.
 
 at 56;
 
 see generally
 
 Sobel, Eyewitness Identification: Legal and Practical Problems § 5:13 [2d ed 2001]).
 

 [6]
 

 . Even assuming defendant would have received notice of the surveillance tape viewing before trial, a
 
 Wade
 
 hearing on the subject would have been all but purposeless. Unlike true identification procedures such as lineups, showups or photo arrays (where a defendant can demonstrate suggestibility by attacking the procedure itself or the conduct of the police), defendant’s only way of arguing suggestibility — however dubious the claim— would have been to call the clerk as a witness at the
 
 Wade
 
 hearing. Under our case law, however, a defendant does not have an absolute right to do so
 
 (see People v Chipp, 75
 
 NY2d 327, 334-339 [1990]). He was free at trial, of course, to pursue the reliability of the clerk’s identification of defendant by cross-examination and other means.