**UNITED STATES of America,**
**Plaintiff,**

v.

**Donald Scott TAYLOR, Defendant.**

**Case No. CR 07–1244 WJ.**

United States District Court,
D. New Mexico.

Sept. 30, 2009.

Brian A. Pori, Inocente, P.C., Albuquerque, NM, Lori Tiffany Flowers, Michael N. Burt, San Francisco, CA, for Defendant.

## *MEMORANDUM OPINION AND ORDER GRANTING UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY OF ADINA SCHWARTZ*

WILLIAM P. JOHNSON, District Judge.

THIS MATTER comes before the Court on the United States' Motion to Exclude Expert Testimony of Adina Schwartz [Doc. 372], filed July 13, 2009. Having considered the parties' written and oral arguments as well as the applicable law, and after considering the testimony of Adina Schwartz, Ph.D. ("Dr. Schwartz"), the Court finds that the motion is well taken and shall be **GRANTED.**

## INTRODUCTION

The Defendant is charged in the Superseding Indictment [Doc. 82] with Conspiracy to Murder Jimmy S. "Bo" Chunn, Murder of Jimmy S. "Bo" Chunn, Conspiracy to Manufacture 50 Grams and more of Methamphetamine, Using a Firearm During and in Relation to a Crime of Violence, two counts of Felon in Possession of a Firearm, Possession of an Unregistered Firearm, and Possession of Stolen Firearms. The Superseding Indictment also alleges that the actions of Defendant were performed to benefit the Aryan Brotherhood, which constitutes a criminal enterprise as defined in 18 U.S.C. § 1959(b)(2).

Subsequent to the murder of Mr. Chunn, while Defendant was incarcerated by the State of New Mexico on an unrelated parole violation, the Federal Bureau of Investigation (FBI) placed a Government informant in the prison cell next to Defendant's cell. After a relatively short period of time Defendant and the informant developed a relationship which resulted in Defendant eventually confessing to the murder of Mr. Chunn. Defendant also disclosed to the informant the exact location where he hid the 30.30 caliber rifle he allegedly used to kill Mr. Chunn. FBI officials recovered the alleged murder weapon at the precise location described by Defendant. The subject rifle was then tested by the Government's firearms expert.

On April 20, 2009 the Government filed an Amended Notice of Expert Witness Testimony in which it declared its intention to call as an expert witness Steve Guerra, a forensic scientist with the New Mexico Department of Public Safety Forensic Laboratories, who specializes in the examination of firearms and toolmarks. [Doc. 235]. The Government subsequently withdrew Mr. Guerra as a witness, but

filed notice of its intention to introduce the expert testimony of Ron G. Nichols, a firearms and toolmark examiner with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. [Doc. 425]. Defendant moved to exclude any expert testimony on firearms examination, [Doc. 277], primarily on the basis that the field of firearms identification is unreliable.[1] In making this argument, Defendant relied heavily on an affidavit from Dr. Schwartz, *see* Affidavit of Adina Schwartz, [Doc. 277–2], a professor of law who has done extensive academic research and writing criticizing the field of firearms identification. The Defendant subsequently filed a notice stating that, should the Court deny his motion to exclude the firearms expert testimony, he intends to call Dr. Schwartz as an expert on the reliability of firearms identification. [Doc. 337]. The Government then filed the instant motion seeking to exclude Dr. Schwartz* testimony on the grounds that: (1) allowing her to testify at trial about the reliability of firearms identification after the Court has held Mr. Nichols's expert testimony on firearms identification to be admissible would undermine the Court's gatekeeping function and (2) Dr. Schwartz is only an academic scholar and is not qualified to testify as an expert on the firearm and toolmark evidence the United States anticipates offering in its case-in-chief. The Court held a *Daubert* hearing on the Government's motion to exclude Dr. Schwartz's testimony on September 2, 2009, at which Dr. Schwartz testified.

## DISCUSSION

### I. Dr. Schwartz's Qualifications

Dr. Schwartz obtained a B.A. in Philosophy from Oberlin College in 1971, a Ph.D. from the Rockefeller University in 1976, and a J.D. from Yale Law School in 1985. She is currently a professor of police science and criminal justice administration at the John Jay College of Criminal Justice at the City University of New York, where she teaches classes on the role of evidence, experts, and science in the criminal justice system. Dr. Schwartz has published numerous articles and studies, and also given numerous presentations regarding challenges to firearms and toolmark identification. Her articles have appeared in a variety of publications and forensic science journals, including the Journal of Forensic Sciences, the Encyclopedia of Law Enforcement, the Columbia Science & Technology Review, the Journal of Philosophy, Science & Law, the textbook *Psychological and Scientific Evidence in Criminal Trials*, and the Champion. She has also lectured widely on the subject of firearm and toolmark identification, and she has testified at *Daubert* hearings and submitted affidavits in numerous state and federal court cases.

Defendant seeks to have Dr. Schwartz qualified as an expert witness on firearms and toolmark identification, based on her familiarity with and contribution to the relevant literature, to "express the opinion that firearms and toolmark identification is inherently unreliable." Notice of Expert

1. The Court announced in an oral ruling on September 14, 2009, that Defendant's motion to exclude the Government's firearms identification evidence is denied, and that the Government's firearms expert, Ron Nichols, will be allowed to give expert opinion testimony regarding firearms identification. Mr. Nichols testified before this Court at the *Daubert* hearing on September 3, 2009. Mr. Nichols testified that he was not told how the Government had obtained the weapon he was being asked to test. Instead, Mr. Nichols was simply given the suspect weapon and the bullet believed to have killed Mr. Chunn, and asked to determine whether there was a match. The Court will issue a written opinion in the very near future memorializing in writing what the Court orally announced on the Record regarding Mr. Nichols.

Testimony of Adina Schwartz [Doc. 337] at 3–4.

## II. Rule 702 and *Daubert/Kumho*

Federal Rule of Evidence 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence, or to determine a fact on issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*See also United States v. Baines*, 573 F.3d 979, 985 (10th Cir.2009) (quoting Fed. R.Evid. 702). It is the duty of the district court to ensure that any expert testimony admitted "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The burden of proof is on the proponent of the expert, in this case the Defendant. *Baines*, 573 F.3d at 985. In *Daubert*, the Supreme Court set out a nonexhaustive set of factors that trial courts may consider in determining whether proposed expert testimony is based on reliable methods and principles: (1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the techniques operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community. 509 U.S. at 593–94, 113 S.Ct. 2786.

■ *Daubert* itself was limited to scientific evidence, *see Baines*, 573 F.3d at 985, but in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme Court made clear that the gatekeeping obligation of the district courts described in *Daubert* applies, not just to scientific testimony, but to all expert testimony. *Id.* at 141, 119 S.Ct. 1167. While a district court may consider the *Daubert* factors in determining the admissibility of non-scientific expert testimony to the extent they are relevant, *id.* at 150, 119 S.Ct. 1167, "the test of reliability is flexible, and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 141–42, 119 S.Ct. 1167.

## III. Dr. Schwartz is Not Qualified to Opine About the Conclusions Reached by the United States' Firearms Identification Expert

■ First, the Court finds that Dr. Schwartz is not qualified by knowledge, skill, training, education, or any other means to give opinion testimony in which she disagrees (or agrees, for that matter) with the specific conclusions of the Government's firearms examiner in this case. As many other courts that have had occasion to interact with Dr. Schwartz have noted, she is not a firearms examiner. *See, e.g., United States v. Monteiro*, 407 F.Supp.2d 351, 367 (D.Mass.2006); *United States v. Barnes*, 04 CR 186, at *8 (S.D.N.Y. April 2, 2008) (unpublished decision), *Commonwealth v. Meeks, et al.*, Nos. 2002–10961, 2003–10575, 2006 WL 2819423, at *29–37 (Mass.Super. Sept. 28, 2006) (unpublished decision). She has no experience in conducting firearms or toolmark identification examinations, nor has she ever taken a proficiency test in the field of firearm investigations; indeed she testified before this Court that she has never fired a gun.

Therefore, Dr. Schwartz is not qualified to testify as to her opinion about the accuracy or inaccuracy of the conclusions reached by the firearms examiner in this case.

### IV. Dr. Schwartz's Proposed Testimony as to the Unreliability of Firearms and Toolmark Identification Will Not Assist the Trier of Fact and Will Likely Lead to Juror Confusion

■ The more difficult question presented is whether Dr. Schwartz should be allowed to testify, based on her extensive writing and research, as an academic expert on the unreliability of firearms and toolmark identification generally. Dr. Schwartz's extensive research and writing about the various criticisms of field of firearms and toolmark identification certainly qualify her as an expert on that narrow topic within the meaning of *Daubert* and Rule 702. It remains for the Court to determine whether her testimony will assist the trier of fact and whether it "rests on a reliable foundation." *Daubert,* 509 U.S. at 597, 113 S.Ct. 2786.

### A. *Velasquez* and *Mitchell*

Defendant calls the Court's attention to two Third Circuit opinions, *United States v. Velasquez,* 64 F.3d 844 (3d Cir.1995), and *United States v. Mitchell,* 365 F.3d 215 (3d Cir.2004). In *Velasquez,* the defendant was tried on federal drug, firearms, and conspiracy charges. 64 F.3d at 845–46. The Government called a handwriting expert, Lynn Bonjour, who had been employed as a forensic document analyst with the United States Postal Inspection Service for more than fourteen years, to give expert opinion testimony as to the authorship of certain mailing labels that

had been used to ship drugs. *Id.* at 846. To counter the Government's handwriting expert, the defense sought to call Mark P. Denbeaux, a Professor of Law at Seton Hall University, to testify as a critic of the field of handwriting analysis. *Id.*[2] The district court refused to permit Professor Denbeaux to testify either as an expert on the limitations of handwriting analysis generally or on the limitations of Ms. Bonjour's particular opinions concerning the case, reasoning that "whether or not handwriting expertise is admissible in a courtroom is a legal question that was resolved against the defense when the court permitted Ms. Bonjour to testify as a qualified expert in the field of handwriting analysis." *Id.* at 846–47 (internal citations and quotations omitted). The jury convicted the defendant on six counts. *Id.* at 847.

On appeal, the Third Circuit reversed the conviction because of the district court's refusal to admit Professor Denbeaux's testimony. The Circuit found that Denbeaux had "sufficient specialized knowledge of the limitations of handwriting analysis to be considered an expert in that regard," and that his testimony was reliable enough to be admissible under Rule 702. *Id.* at 851. In light of those findings, the Circuit reasoned that, "[b]ecause Professor Denbeaux's proffered testimony called into question the reliability and credibility of Lynn Bonjour's handwriting testimony, the jury should have been permitted to hear his testimony in order to properly weigh the testimony of Ms. Bonjour." *Id.* at 848. The Circuit went on to state that "[i]f the jury had had the opportunity to credit Denbeaux's testimony ... the jury might have discounted Ms. Bonjour's testimony and thereby

---

**2.** The defense in the *Velasquez* case alternatively sought to have Professor Denbeaux qualified as a handwriting expert. The district court refused to qualify Professor Den-

beaux as a handwriting expert, pointing to his "lack of formal training and inadequate practical experience in performing handwriting analysis." 64 F.3d at 847.

found that the Government had failed to prove beyond a reasonable doubt ... a necessary element of his conviction." *Id.* The Circuit held that "the district court's determination on the admissibility of Ms. Bonjour's handwriting analysis testimony should not be permitted to preclude the jury from hearing other relevant evidence attacking the reliability of her testimony." *Id.* at 848–49.

The Third Circuit re-affirmed its holding in *Velasquez* in its 2004 decision in *United States v. Mitchell,* 365 F.3d 215. *Mitchell* involved a challenge to the admissibility of latent fingerprint identification evidence. The defendant in that case sought to introduce the testimony of three principle expert witnesses to rebut the testimony of the Government's expert witnesses on fingerprint identification. *Id.* at 227–28. The Third Circuit's opinion indicates that two of these proffered experts were professors, while the third was a post-doctoral fellow, and that at least one of them had no experience at all in latent fingerprint examination. *Id.* The district court allowed the defendant's proffered expert witnesses to give testimony at trial to the effect that "fingerprints are not reliable sources of information." *Id.* at 229 (quoting from the district court's oral ruling). On appeal, the Third Circuit pointed out that the district court never explicitly ruled on whether the unreliability of fingerprint evidence *as a topic* was admissible, but had instead ruled on whether or not specific proffered expert witnesses would be allowed to testify. *Id.* at 251. Nonetheless, the Circuit clearly indicated that any ruling that the unreliability of fingerprint evidence as a topic was inadmissible would have been incorrect: "Those ... experts also testified to the reliability (or lack thereof) of fingerprint identification. That evidence, under *Velasquez,* would have been unambiguously admissible." *Id.*

## B. Related case law

At least one district court outside the Third Circuit has adopted the approach taken in this line of cases. *United States v. Yagman,* No. CR 06–227(A), 2007 WL 4409618 (C.D.Cal.2007) (unpublished decision), was another handwriting case, and it involved the proffered testimony of the same handwriting analysis critic at issue in *Velasquez,* Professor Denbeaux. The district court in that case held that, "[b]ased on *Velasquez* ... Denbeaux's testimony is admissible. However, Denbeaux's testimony is limited to a discussion of the limitations of handwriting analysis generally because Denbeaux concedes that he is not an handwriting analyst expert." *Id.* at *12.

However, at least two other courts, when confronted with the proffered expert testimony of the same Professor Denbeaux who was the subject of the *Velasquez* opinion, have declined to follow the *Velasquez* approach. In *United States v. Paul,* 175 F.3d 906 (11th Cir.1999) the Eleventh Circuit upheld a district court's decision to exclude Professor Denbeaux's testimony critiquing the field of handwriting analysis "because the district court thought his testimony would be confusing to the jury." *Id.* at 909. It is not entirely clear whether the defendant in that case was proffering Denbeaux as an expert in the unreliability of handwriting analysis, or simply as an expert in handwriting analysis. However, what is clear is that the defendant argued on appeal that Denbeaux's testimony should have been admitted because it would allow the jury to understand the limitations of the Government's handwriting expert's testimony. *See id.* at 911–12. In dismissing this argument, the Eleventh Circuit focused on the fact that Denbeaux simply had no experience in handwriting analysis. The Court found that Denbeaux: "(1) did not possess an acceptable degree

of 'knowledge;' (2) would not have assisted the jury; and (3) was not a qualified expert." *Id.* at 912.

In *A.V. By Versace, Inc. v. Gianni Versace S.p.A.,* 446 F.Supp.2d 252 (S.D.N.Y. 2006), the United States District Court for the Southern District of New York explicitly rejected the idea that it was required to allow the jury to hear Professor Denbeaux's testimony critiquing the field of handwriting analysis in order to allow the jury to make its own reliability assessment. In commenting on Denbeaux's proposed testimony, the district court stated in a footnote, "The Court, recognizing its own capability of assessing the weight of [the Government's handwriting expert's] testimony and thus finding that Denbeaux's testimony would not assist the trier of fact in determining the authenticity of the signature on the Letter of Intent, found that Denbeaux was not qualified to testify as an expert under Rule 702." *Id.* at 268 n. 15 (internal citations and quotations omitted).

### C. Application to this case

Although the Court acknowledges the existence of the precedent from the Third Circuit suggesting testimony of the kind proffered by Dr. Schwartz should be admitted, in the absence of controlling Supreme Court or Tenth Circuit precedent, the Court finds those cases that have declined to adopt the Third Circuit's approach and that have excluded such testimony more persuasive. Specifically, the Court finds the Eleventh Circuit's opinion in *Paul* and the United States District Court for the Southern District of New York's opinion in *Versace* to be very persuasive authority.

The *Versace* court's discussion related to its refusal to allow Professor Denbeaux to testify neatly encapsulates a significant part of the reason why this Court is unwilling to admit Dr. Schwartz's proffered testimony. In that case, one party claimed that his signature had been forged, while the other party claimed that it was genuine. The party arguing that there was forgery called a handwriting expert to give an expert opinion to that effect. The district court pointed out that the other party did not produce its own handwriting expert to testify that the signature was genuine, *but instead* attempted to introduce Professor Denbeaux's testimony critiquing the entire field of handwriting analysis, which the court refused to allow. *See* 446 F.Supp.2d at 268 & n. 15.

Defendant Taylor attempts to perform the same sleight of hand here. Defendant argues strenuously that the Court must not abuse its gatekeeping function by choosing sides in a legitimate scientific debate, and even goes so far as to contend that by excluding Dr. Schwartz's testimony the Court would be depriving him of his constitutional right to present a defense. However, by excluding Dr. Schwartz's testimony, this Court is not in any way choosing sides in the debate about the relative merits and weaknesses of firearms identification, nor is it preventing Mr. Taylor from presenting expert testimony to rebut that of the Government's firearms identification expert.

The Court is emphatically not denying Defendant's right to call his own firearms expert to testify about the weaknesses of the methodologies in that field, or to disagree with the conclusions reached by the Government's firearms examiner. In fact, the Court, in accordance with the Criminal Justice Reform Act, 18 U.S.C. § 3006A, approved Defendant's request to hire a forensic ballistics consultant, and the Court approved payment of said expert's invoice for services rendered, which included examination and/or testing of the 30.30 caliber rifle allegedly used by Defendant to murder Mr. Chunn. Defendant, for whatever reason, has not chosen to have this

firearms expert testify at trial. Instead, he seeks to introduce the testimony of an academic who has no actual experience with firearms identification. It is disingenuous for the defense to represent Dr. Schwartz as its firearms expert, called to offer an opinion equivalent to, but opposite, that of the Government's firearms expert. What the Court is confronting in the proffered testimony of Dr. Schwartz is not a difference of opinion, but a difference in *kind* of expert.

Dr. Schwartz's general critiques of the firearms identification field are undoubtedly appropriate subject matter for a *Daubert* hearing on the admissibility of firearms identification expert opinion testimony, as evidenced by the fact that Dr. Schwartz has been allowed to testify at such hearings on previous occasions. But to allow Dr. Schwartz to give this testimony during a trial would not be, as Defendant argues, to allow a healthy "battle of the experts." Instead, it would be to engage in what this Court considers the highly questionable practice of allowing a second *Daubert* hearing to play out in front of the jury. This kind of second *Daubert* hearing would have two undesirable qualities. First, it would not be very helpful to the jury. Defendant seeks to use Dr. Schwartz's testimony to demonstrate to the jury the shortcomings of the methodologies used by firearms examiners. However, this argument can and surely will be much more appropriately and effectively made through rigorous cross examination of the Government's firearms examiner. Second, while it would not be particularly helpful, this second *Daubert* hearing would very likely confuse the jury. Therefore, the Court finds that Dr. Schwartz's proposed testimony on the unreliability of firearms identification simply is not an appropriate subject for expert opinion testimony. The Court finds support for its conclusion in the fact that, while it appears that Dr. Schwartz has testified at numerous *Daubert* hearings, Defendant has not produced, nor has the Court been able to locate, any case in which Dr. Schwartz was allowed to testify as an expert in front of a jury at trial.

## V. Dr. Schwartz's Testimony is Not Sufficiently Reliable

Even if this Court were to adopt the approach taken by the Third Circuit in *Velasquez* and conclude that Dr. Schwartz's academic opinion about the unreliability of firearms identification is an appropriate subject for expert testimony, the Court nonetheless must only admit the testimony if it finds that it is the product of reliable principles and methods, which the expert witness has applied reliably to the facts of the case. Fed.R.Evid. 702. Here, the Court finds that Dr. Schwartz's testimony, even if it were otherwise admissible, is not sufficiently reliable to meet the standards set out by Rule 702 and the *Daubert/Kumho* line of cases. During the *Daubert* hearing on this motion, the Government's firearms expert, Ron Nichols, pointed out at least one place in Dr. Schwartz's published writings where she took a quotation from another publication so far out of context as to completely reverse its meaning and cause it to be misleading. In addition, in his article, The Scientific Foundations of Firearms and Tool Mark Identification–A Response to Recent Challenges, The CACNews, 2nd Quarter 2006, 8, Mr. Nichols states that Dr. Schwartz's research relies on secondary, rather than primary, sources. *Id.* Mr. Nichols further argues that, in another part of her article, Dr. Schwartz not only mischaracterizes as a "study" something that is actually a one-page technical note, but also misrepresents the underlying thesis of that note. *Id.* at 10.

**1200**

These are serious criticisms, not just of Dr. Schwartz's conclusions, but of the integrity of her scholarship. Dr. Schwartz is being represented to this Court as an expert scholar who can assist the jury by summarizing for them the literature in the field of firearms and toolmark identification. Surely, then, in fulfilling its duty to assess the reliability of Dr. Schwartz's methodology and the reliability of her application of that methodology to this case, a central focus of the Court's inquiry should be the accuracy and honesty of Dr. Schwartz's representations of the existing literature in her field. Mr. Nichols' various criticisms of Dr. Schwartz's process cause the Court to seriously question the reliability of her methodology.

### CONCLUSION

The Court finds that Dr. Schwartz is not qualified to give an expert opinion as to the conclusions reached by the Government's firearms expert Ron Nichols in this case. Further, the Court finds that Dr. Schwartz's proposed expert testimony as to her opinion that the field of firearms and toolmarks identification is inherently unreliable is not admissible because: (1) it will not assist the jury since most of the points Defendant seeks to illustrate through Dr. Schwartz's can more appropriately be made through rigorous cross examination of the Government's expert; (2) conducting this kind of "second *Daubert* hearing" during trial will very likely lead to juror confusion; and (3) the Court does not find Dr. Schwartz's testimony to be sufficiently reliable to be admissible under Rule 702 and *Daubert/Kumho*. Accordingly, the Court, in the exercise of its gatekeeping function, shall close the gate on Dr. Schwartz's proposed expert testimony in this case.

**THEREFORE, IT IS ORDERED** that the United States' Motion to Exclude Expert Testimony of Adina Schwartz [Doc. 372] is hereby **GRANTED** for the reasons set forth in this Memorandum Opinion and Order.