OPINION OF THE COURT
Troy K. Webber, J.
*476 Defendant, by notice of motion dated September 15, 2010, moves for an order precluding the People from offering expert testimony as to firearms and toolmark identification. Defendant argues that such testimony is no longer generally accepted in the relevant scientific and legal communities. Defendant requests that a hearing pursuant to Frye v United States (293 F 1013 [DC Cir 1923]) be conducted.
On October 6, 2007, Detective Iris Beresciani and her partner Detective Anthony Rosario were assigned to what was ultimately a homicide investigation of an incident which had occurred at approximately 3:55 p.m. on that day, in the vicinity of 988 East 180th Street, in Bronx County. During the investigation, ballistics evidence which consisted of six shell casings and four deformed bullets was recovered from the crime scene. Two pieces of ballistics evidence were recovered from the body of the deceased, Frederick Brown. The weapon used in the shooting was not recovered.
The ballistics items were submitted for testing, specifically for firearms and toolmark examination. It was the opinion of the firearms examiner that the six shell casings were discharged from the same firearm. However, no conclusive findings could be drawn relating to the four deformed bullets recovered from the scene or the two pieces of ballistics evidence recovered from the body of the deceased.
As stated above, defendant seeks to preclude the introduction of testimony regarding the ballistics testing. Defendant asserts that firearms and toolmark identification is no longer generally accepted in the relevant scientific and legal community, especially where, as in this case, the firearm is not recovered. In support of his position, defendant cites various articles and federal court decisions and submits the affirmation of Professor Adina Schwartz of John Jay College of Criminal Justice.
Frye v United States (supra) addresses the admissibility of new or not yet generally accepted scientific evidence. According to Frye, a scientific method, theory or technique may be admissible after there has been general acceptance in the relevant scientific community. Obviously, scientific methods and techniques are ever evolving. It may be that a particular method or theory may no longer be accepted in the relevant scientific community. Here, defendant argues that firearms and toolmark identification has lost acceptance in the scientific community.
In her affirmation, Professor Adina Schwartz appears to attack the methodology employed by many experts as opposed to *477 the fundamental methodology itself.[1] Similarly, the report issued by the National Academy of Sciences appears to question the way in which results of the testing are reported and the lack of review of the initial findings of the examiner.
In none of the cases cited by the defendant did a court find that firearms and toolmark identification is no longer scientifically acceptable or is unreliable. In United States v Willock (696 F Supp 2d 536 [2010]), the court specifically denied defendant’s motion to exclude such testimony. In United States v Natson (469 F Supp 2d 1253 [2007]), the court also found firearms and toolmark identification testimony to be admissible. Finally, in United States v Monteiro (407 F Supp 2d 351 [2006]), the court rejected defendant’s request to exclude such testimony and ruled that the expert could state their opinion/conclusions regarding firearms and toolmark identification “to a reasonable degree of ballistic certainty” {id. at 372).
The recent case of United States v Glynn (578 F Supp 2d 567 [2008]) presents facts similar to those here. In Glynn, the prosecution sought to introduce expert testimony from a firearms analyst that it was his opinion, “to a reasonable degree of ballistic certainty,” that a bullet recovered from the victim’s body and shell casings recovered from two related crime scenes came from firearms linked to the defendant {id. at 568). The defense moved to preclude the testimony on the ground that the field of ballistics is not based on sufficiently reliable methods to satisfy the threshold requirements for admissibility. The court undertook an exhaustive review of the relevant case law as well as empirical data and concluded that while ballistics examinations may lack the rigor of science and may suffer from greater uncertainty than other kinds of forensic evidence, the methodology has garnered sufficient empirical support to warrant admissibility. (Glynn at 574.)[2]
*478 This court was unable to find any cases where firearms and toolmark identification was found to be unreliable or no longer scientifically acceptable. Nor were there instances where the testimony was ruled to be inadmissible. While concerns have been expressed regarding the scientific methodology of firearms and toolmark identification, when faced with the issue, courts, such as in Willock, have typically allowed the testimony, noting that the defense may certainly challenge any expert testimony through cross-examination and/or by offering defense experts to challenge the findings of the People’s expert witness. ('Willock at 547.)
Based upon the aforesaid, defendant’s motion for an order precluding the People from offering expert testimony as to firearms and toolmark identification or, in the alternative, for a hearing pursuant to Frye v United States, is denied.[3]

. Professor Schwartz’ findings have been criticized by many in the scientific (ballistics) community and she has been denied qualification as an expert in firearms. (See United States v Taylor, 704 F Supp 2d 1192 [D NM 2009]; United States v Monteiro, 407 F Supp 2d 351, 367 [D Mass 2006].) However, in United States v Glynn (578 F Supp 2d 567 [SD NY 2008]), the court accepted an affidavit from Professor Schwartz for purposes of a hearing pursuant to Daubert v Merrell Dow Pharmaceuticals, Inc. (509 US 579 [1993]). The court also accepted a critique of Professor Schwartz’ arguments.

. In Glynn, the court, in addressing issues to be raised on the retrial of the case, concluded that in order to avoid the false conclusion or impression by the jury that the results of the examination were certain beyond all doubt or *478 that the error rate of the methodology was “zero,” the expert would be directed to give an opinion as “more likely than not.” (Id.)

. This written decision incorporates the court’s oral decision of October 21, 2010.