People v Johnston (2021 NY Slip Op 01632)





People v Johnston


2021 NY Slip Op 01632


Decided on March 19, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 19, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CURRAN, TROUTMAN, AND DEJOSEPH, JJ.


847 KA 13-02064

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JERMAINE W. JOHNSTON, DEFENDANT-APPELLANT. 






THE ABBATOY LAW FIRM, PLLC, ROCHESTER (DAVID M. ABBATOY, JR., OF COUNSEL), FOR DEFENDANT-APPELLANT. 
JERMAINE W. JOHNSTON, DEFENDANT-APPELLANT PRO SE.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH R. MERVINE OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Monroe County Court (James J. Piampiano, J.), rendered November 7, 2013. The judgment convicted defendant upon a jury verdict of murder in the second degree (two counts), attempted murder in the second degree (two counts), robbery in the first degree (three counts), assault in the first degree (two counts), attempted assault in the first degree and criminal possession of a weapon in the second degree (seven counts). 
It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by reversing those parts convicting defendant of criminal possession of a weapon in the second degree under counts 8, 11, and 16 of the indictment and dismissing those counts of the indictment, and as modified the judgment is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, two counts of murder in the second degree (Penal Law § 125.25 [1]), two counts of attempted murder in the second degree (§§ 110.00, 125.25 [1]), three counts of robbery in the first degree (§ 160.15 [1], [2], [3]), and seven counts of criminal possession of a weapon in the second degree (§ 265.03 [1] [b]; [3]), arising from a series of incidents in June and July 2012 in which two men were killed and three others were injured. Defendant contends in his main brief that the police lacked reasonable suspicion or probable cause to stop a vehicle in which he was a passenger, and that County Court therefore erred in refusing to suppress, as the fruits of that illegal stop, physical evidence seized following his arrest several hours later at a hospital and his subsequent statements to the police. In his omnibus motion papers and subsequent affidavits, however, defendant sought suppression only with respect to his statements, and only on the grounds that they were involuntarily made and that the police lacked probable cause to effect the arrest. Consequently, his challenge to the earlier stop of the vehicle is not preserved for our review (see People v Crouch, 70 AD3d 1369, 1370 [4th Dept 2010], lv denied 15 NY3d 773 [2010]; see generally People v Lopez, 139 AD3d 1381, 1383 [4th Dept 2016]). In any event, defendant's contention lacks merit. The police officers released defendant immediately after that stop, and the only evidence they obtained as the result of it was defendant's identity. It is well settled "that the body or identity of a defendant . . . in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred" (People v Tolentino, 14 NY3d 382, 384-385 [2010], cert dismissed 563 US 123 [2011] [internal quotation marks omitted]; see People v Pleasant, 54 NY2d 972, 973-974 [1981], cert denied 455 US 924 [1982]; see also INS v Lopez-Mendoza, 468 US 1032, 1039 [1984]).
Defendant further contends in his main brief that the court erred for several additional reasons in refusing to suppress his statements to the police. We reject defendant's first such reason, i.e., that his statements were involuntary due to psychological coercion, the length of the [*2]interrogation, and the deception employed by the investigators who interviewed him. It is well settled that, in order to introduce evidence at trial that a defendant made a statement to the police, the People "must show that the statements were not products of coercion, either physical or psychological (see Miranda v Arizona, 384 US 436, 448 [1966]), or, in other words, that they were given as a result of a 'free and unconstrained choice by [their] maker' (Culombe v Connecticut, 367 US 568, 602 [1961]). The task is the same where deception is employed in the service of psychologically oriented interrogation; the statements must be proved, under the totality of the circumstances . . . —necessarily including any potentially actuating deception—the product of the maker's own choice" (People v Thomas, 22 NY3d 629, 641-642 [2014]).
Here, we conclude that any alleged police deception in the form of exaggeration of the evidence is insufficient under the circumstances presented to warrant suppression (see People v Deitz, 148 AD3d 1653, 1654 [4th Dept 2017], lv denied 29 NY3d 1125 [2017]; see generally People v Tarsia, 50 NY2d 1, 11 [1980]), and "the duration of the interview did not render the resulting statement involuntary" (People v Huff, 133 AD3d 1223, 1225 [4th Dept 2015], lv denied 27 NY3d 999 [2016]; see People v Clyburn-Dawson, 128 AD3d 1350, 1351 [4th Dept 2015], lv denied 26 NY3d 966 [2015]; cf. People v Guilford, 21 NY3d 205, 210-212 [2013]). We further conclude that "[d]efendant . . . was not subjected to the type of deprivations and psychological pressure . . . [that] 'bespeak such a serious disregard of defendant's rights, and [are] so conducive to unreliable and involuntary statements, that the prosecutor has not demonstrated beyond a reasonable doubt that the defendant's will was not
overborne' " (People v Jin Cheng Lin, 26 NY3d 701, 725 [2016]; cf. Thomas, 22 NY3d at 641).
We agree in part with defendant's further challenge in his main brief to the admissibility of his statements to the police, i.e., that the statements that he made after he invoked his right to remain silent should have been suppressed. " 'It is well settled . . . that, in order to terminate questioning, the assertion by a defendant of his right to remain silent must be unequivocal and unqualified' . . . Whether that request was 'unequivocal is a mixed question of law and fact that must be determined with reference to the circumstances surrounding the request[,] including the defendant's demeanor, manner of expression and the particular words found to have been used by the defendant' (People v Glover, 87 NY2d 838, 839 [1995]). The court's determination that defendant did not unequivocally invoke his right to remain silent is 'granted deference and will not be disturbed unless unsupported by the record' " (People v Zacher, 97 AD3d 1101, 1101 [4th Dept 2012], lv denied 20 NY3d 1015 [2013]).
Here, defendant told the police three times that he did not wish to speak to them. We conclude that the court's determination that defendant did not unequivocally invoke his right to remain silent is supported by the record with respect to the first such instance, because in that instance he "did not clearly communicate a desire to cease all questioning indefinitely" (People v Caruso, 34 AD3d 860, 863 [3d Dept 2006], lv denied 8 NY3d 879 [2007]; see People v Reibel, 181 AD3d 1268, 1270-1271 [4th Dept 2020], lv denied 35 NY3d 1029 [2020], reconsideration denied 35 NY3d 1096 [2020]), "especially in light of his continued participation in the conversation" (People v Flowers, 122 AD3d 1396, 1397 [4th Dept 2014], lv denied 24 NY3d 1219 [2015]). We further conclude, however, that the remainder of the court's determination is not supported by the record, inasmuch as, twice more during the questioning, "defendant said that he did not want to talk about [the crimes], thus unequivocally invoking his right to remain silent" (People v Brown, 266 AD2d 838, 838 [4th Dept 1999], lv denied 94 NY2d 860 [1999]; see People v Henry, 133 AD3d 1085, 1086-1087 [3d Dept 2015]; People v Graham, 48 AD3d 265, 266 [1st Dept 2008], lv denied 10 NY3d 959 [2008]). Consequently, the court was required to suppress the statements that defendant made after invoking his right to remain silent for the second time. Nevertheless, we conclude that the error in failing to suppress those statements is harmless inasmuch as the proof of guilt is overwhelming and there is no reasonable possibility that the jury would have acquitted defendant if the court had suppressed the statements that he made after that point (see People v Brown, 120 AD3d 954, 955 [4th Dept 2014], lv denied 24 NY3d 1118 [2015]; Brown, 266 AD2d at 838-839; see generally People v Crimmins, 36 NY2d 230, 237 [1975]). We note that, at the time of his arrest, defendant possessed the handgun that was taken from the stabbing victim in the first set of crimes that defendant was charged with committing, and that handgun was used in the remaining crimes. Defendant also matched the description of the person involved in all of the crimes, and he was depicted in video surveillance recordings from businesses near several of the crime scenes before or after the crimes were committed. In addition, the police recovered clothing of the same type and color as that worn by [*3]the perpetrator from a house where defendant was staying, DNA consistent with defendant's DNA was found on some of that clothing, a police investigator identified defendant as being at the scene of one of the crimes when the investigator arrived, several witnesses identified defendant as the perpetrator in court, and defendant made statements to the police before invoking his right to remain silent in which he admitted possessing the handgun at issue and being at the scene of the crimes.
Defendant also contends in his main brief that the court erred in declining to suppress identification testimony by several witnesses. Defendant's "contention that the court erred in failing to suppress the prospective in-court identification testimony of [two witnesses] is moot, inasmuch as [those witnesses] did not identify defendant at trial" (People v Goodrell, 130 AD3d 1502, 1503 [4th Dept 2015]; see People v Cormack, 170 AD3d 1628, 1629 [4th Dept 2019], lv denied 34 NY3d 979 [2019]). We further conclude that, contrary to defendant's contention, the viewing by certain witnesses of still photos from "a surveillance video of [one of] the [crime scenes] did not constitute an identification procedure" (People v Justice, 127 AD3d 786, 786 [2d Dept 2015], lv denied 27 NY3d 1000 [2016]; see also People v Cascio, 79 AD3d 1809, 1811 [4th Dept 2010], lv denied 16 NY3d 893 [2011]; see generally People v Gee, 99 NY2d 158, 161-164 [2002], rearg denied 99 NY2d 652 [2003]). For the same reason, we reject defendant's contention in his pro se supplemental brief that the court erred in permitting evidence that bolstered those identifications. Defendant's challenge in his main brief to the identification procedure involving the stabbing victim, in which he contends that the identification was not confirmatory, is moot inasmuch as "[d]efendant does not challenge the court's determination that the photo array shown to the [victim] was not unduly suggestive and, thus, there is no need to consider his challenge" (People v Craven, 48 AD3d 1183, 1185 [4th Dept 2008], lv denied 10 NY3d 861 [2008]).
Defendant further contends in his pro se supplemental brief that the evidence is not legally sufficient to support the conviction with respect to the element of serious physical injury sustained by the stabbing victim, as charged in several counts of the indictment. We reject that contention because we conclude that, "[g]iven the proof that the victim suffered a collapsed lung, the jury reasonably found that he sustained a serious physical injury within the meaning of Penal Law § 10.00 (10)" (People v Addison, 184 AD3d 1099, 1100 [4th Dept 2020], lv denied 35 NY3d 1092 [2020]; see also People v Barbuto, 126 AD3d 1501, 1502 [4th Dept 2015], lv denied 25 NY3d 1159 [2015]). In addition, contrary to defendant's contention in his main and pro se supplemental briefs, based on our review of the admissible evidence, and viewing that evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Defendant contends in his pro se supplemental brief that the court erred in admitting certain hearsay testimony. Even assuming, arguendo, that the evidence constituted inadmissible hearsay, any error in admitting it was harmless. As noted above, the evidence of defendant's guilt is overwhelming, and the testimony in question established only that a person in a surveillance video was the person who committed the crime. Inasmuch as the purported hearsay evidence did not establish that defendant was the person in the video, "there is no significant probability that defendant would have been acquitted but for the admission of the hearsay testimony" (People v Harrington, 182 AD3d 1000, 1001 [4th Dept 2020], lv denied 35 NY3d 1045 [2020]; see generally Crimmins, 36 NY2d at 241-242). Defendant's challenge to the court's instructions to the jury regarding the purported hearsay testimony is not preserved for our review inasmuch as the court "provided . . . curative instruction[s] that, in the absence of an objection or a motion for a mistrial, 'must be deemed to have corrected the error to the defendant's satisfaction' " (People v Szatanek, 169 AD3d 1448, 1449 [4th Dept 2019], lv denied 33 NY3d 981 [2019], quoting People v Heide, 84 NY2d 943, 944 [1994]; see People v Marvin, 162 AD3d 1744, 1745 [4th Dept 2018], lv denied 32 NY3d 1066 [2018]).
Contrary to the further contention of defendant in his pro se supplemental brief, the court did not abuse its discretion in denying his request for a missing witness charge concerning a witness who was not called to testify at trial. The court properly denied that request because the People established the cumulative nature of the witness's testimony (see generally People v Smith, 33 NY3d 454, 458 [2019]), and that "the witness was uncooperative with them and thus not under their control" (People v Cruz-Rivera, 174 AD3d 1512, 1514 [4th Dept 2019], lv denied [*4]34 NY3d 1127 [2020]).
Defendant contends in his main brief that the court erred in admitting in evidence statements that police investigators made to him during a videotaped interrogation of him that was played for the jury. Specifically, defendant contends, inter alia, that those statements contained improper opinion evidence expressing that defendant's statements were not truthful and contrary to the other evidence. Defendant did not object to the admission in evidence of those statements, however, and thus he failed to preserve his contention for our review (see CPL 470.05 [2]; People v Crumpler, 163 AD3d 1457, 1458 [4th Dept 2018], lv denied 32 NY3d 1003 [2018], reconsideration denied 32 NY3d 1125 [2018]; People v Wright, 126 AD3d 1036, 1038-1039 [3d Dept 2015], lv denied 26 NY3d 1094 [2015]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]; People v Davis, 213 AD2d 665, 665 [2d Dept 1995], lv denied 86 NY2d 734 [1995]).
Although we agree with the further contention of defendant in his main brief that the court abused its discretion in precluding defense counsel from engaging in additional cross-examination of a prosecution witness concerning that witness's allegedly perjurious prior testimony (see generally People v Smith, 27 NY3d 652, 668 [2016]), we conclude that the error is harmless (see generally Crimmins, 36 NY2d at 241-242).
We reject defendant's further contention in his main brief that the court erred in declining to grant his motion for a Frye hearing concerning the testimony of the prosecution's ballistics experts, which was based on defendant's contention that such testimony was no longer accepted within the relevant scientific community. It is well settled that, "[a]bsent a novel or experimental scientific theory, a Frye hearing is generally unwarranted" (People v Brooks, 31 NY3d 939, 941 [2018]), and "[t]he determination whether a trial court erred in admitting disputed scientific evidence in the absence of a Frye hearing turns on whether the court abused its discretion as a matter of law" (People v Williams, 35 NY3d 24, 37-38 [2020]). Furthermore, "[a] court need not hold a Frye hearing where it can rely upon previous rulings in other court proceedings as an aid in determining the admissibility of the proffered testimony. 'Once a scientific procedure has been proved reliable, a Frye inquiry need not be conducted each time such evidence is offered [and courts] may take judicial notice of reliability of the general procedure' " (People v LeGrand, 8 NY3d 449, 458 [2007]; see Williams, 35 NY3d at 38; People v Frederick, 186 AD3d 1398, 1399-1400 [2d Dept 2020]).
Here, the testimony to which defendant objected concerned the examination of tool markings on casings, projectiles, and weapons, coupled with the testimony of experts concerning the results of comparisons among those objects, all of which falls under the general umbrella of ballistics. It is well settled that, "[a]lmost daily, . . . ballistic evidence, among a variety of kindred scientific methods, [is] freely accepted in our courts for their general reliability, without the necessity of offering expert testimony as to the scientific principles underlying [it]" (People v Magri, 3 NY2d 562, 566 [1958]). In 2010, a trial court indicated that, upon a search of case law in New York, it "was unable to find any cases where firearms and toolmark identification was found to be unreliable or no longer scientifically acceptable. Nor were there instances where the testimony was ruled to be inadmissible" in this State's courts (People v Givens, 30 Misc 3d 475, 478 [Sup Ct, Bronx County 2010]). Since that time, no New York State court has ruled such testimony inadmissible. Consequently, based on the long-standing and widespread acceptance of the principles involved and on the evidence that defendant proffered in support of his motion, we conclude that the court did not abuse its discretion in concluding that defendant failed to meet his burden of demonstrating that the evidence at issue is no longer accepted within the relevant scientific community.
Defendant additionally contends in his main brief that the court erred in refusing to dismiss various counts of the indictment charging criminal possession of a weapon in the second degree under Penal Law
§ 265.03 (3) inasmuch as the indictment charged him with multiple counts of that crime based on his commission of a singular continuing offense. We agree. "An indictment cannot charge a defendant with more than one count of a crime that can be characterized as a continuing offense unless there has been an interruption in the course of conduct" (People v Quinones, 8 AD3d 589, 589-590 [2d Dept 2004], lv denied 3 NY3d 710 [2004]; see People v Young, 141 AD3d 551, 553-554 [2d Dept 2016], lv denied 28 NY3d 975 [2016]; People v Jackson, 138 AD3d 1143, [*5]1143 [2d Dept 2016]). Here, the indictment charged defendant with four separate counts of criminal possession of a weapon in the second degree under Penal Law § 265.03 (3) for the uninterrupted possession of a single weapon at different times. We conclude that such possession "constituted a single offense for which he could be prosecuted only once" (People v Wright, 160 AD3d 667, 668 [2d Dept 2018], lv denied 31 NY3d 1154 [2018], reconsideration denied 32 NY3d 1069 [2018]; see People v Gardner, 132 AD3d 1349, 1350-1351 [4th Dept 2015]). Consequently, we affirm that part of the judgment convicting defendant of criminal possession of a weapon in the second degree under Penal Law § 265.03 (3) in count 17 of the indictment, and we modify the judgment by reversing those parts convicting him of that crime under counts 8, 11, and 16 of the indictment and dismissing those counts of the indictment.
Contrary to defendant's further contention in his main brief concerning count 17 of the indictment, the court did not err in directing that the sentence imposed on that count run consecutively to the consecutive sentences imposed on certain other counts charging that he used the weapon in question to commit other crimes. The evidence at trial establishes with respect to count 17 that defendant possessed the loaded handgun at a hospital, i.e., outside his home or place of business, at the time that he was arrested, and that he had reloaded it after having used it to commit other crimes; thus, we conclude that there was a completed possession of the gun at the time of defendant's arrest that was separate and distinct from his unlawful use of the gun to commit the other crimes for which consecutive sentences were imposed, which occurred at other times and places (see e.g. People v Lozada, 164 AD3d 1626, 1627 [4th Dept 2018], lv denied 32 NY3d 1174 [2019]; People v Rodriguez, 118 AD3d 451, 452 [1st Dept 2014], lv denied 21 NY3d 964 [2014]).
We have considered defendant's remaining contentions in his main and pro se supplemental briefs, and we conclude that they do not require reversal or further modification of the judgment.
Entered: March 19, 2021
Mark W. Bennett
Clerk of the Court